[Civ. No. 910. Fourth Appellate District.—October 16, 1931.]

MARIE CAZAURANG, Appellant, v. ROBERT P. CARREY et al., Respondents.

A. M. Thompson and H. J. Bischoff for Appellant.

Adam Thompson, Renwick Thompson, J. O. Hughes, Fitzgerald & Selleck, Edward W. Brewer, Jr., and Gray, Cary, Ames & Driscoll for Respondents.

BARNARD, P. J.—The plaintiff was the wife of Jean Cazaurang for more than twenty years before he died on June 15, 1929. After his death, three purported last wills were offered for probate in the Superior Court of San Diego County. One dated April 25, 1928, was offered by this plaintiff; another dated March 5, 1929, was offered by Martin L. Haines; and a third, dated June 11, 1927, was offered by Marie Lees. This action was brought by the plaintiff, seeking an injunction for the purpose of restraining the interested parties from probating the last two of the above-mentioned instruments.

The complaint alleges that the plaintiff and her husband were the owners of a certain ranch containing approximately 16,000 acres; that on February 28, 1926, Jean Cazaurang represented to the plaintiff that it would be to their mutual interest to make reciprocal wills to the end that in the event of the death of either, there might be no necessity for partitioning the ranch property; that pursuant to such representations she entered into an agreement with her husband to make reciprocal wills; that such wills were executed on February 28, 1926, copies of the wills being attached to the complaint; that the said parties did then and there agree that

these wills were not to be revoked or modified except by mutual consent, and that they should be left in the possession of the attorney for both parties and should not be delivered to either party until the death of the other; that on April 25, 1928, by mutual agreement, the parties executed two new reciprocal wills, copies of which were attached to the complaint; that it was then and there agreed between the parties that these wills should not be revoked or modified without the mutual consent of the parties and that the same should be deposited with the same attorney, to be retained in his possession and not delivered to either party until the death of the other; that plaintiff did not revoke or modify her will prior to the death of her husband; that plaintiff had no notice of any later or purported will made by her husband, and at no time consented to any revocation, modification or change in his will; that said reciprocal wills remained in the possession of the attorney until after the death of the husband; and that after the said will of April 25, 1928, was offered for probate by this plaintiff, the other purported wills dated June 11, 1927, and March 5, 1929, were also offered for probate. It is then alleged that any and all attempts of the said Jean Casaurang to revoke, modify or change the said will of April 25, 1928, were and are a fraud upon this plaintiff. An order to show cause was issued and demurrers were filed on behalf of Robert P. Carrey and Martin L. Haines. After a hearing these demurrers were overruled and a preliminary injunction issued. Thereafter, a demurrer to the complaint was filed by Marie Lees and after argument, the demurrer was sustained without leave to amend, and judgment was entered dismissing the complaint. Thereafter an order was made which, after reciting that counsel for Carrey and Haines had moved the court to reopen their argument on their demurrers, ordered that these demurrers be sustained, without leave to amend. From the judgment of dismissal and from the last order sustaining the demurrers of Carrey and Martin, the plaintiff has appealed. The demurrers were sustained by the trial court upon the ground that it appeared from the complaint that the agreement of Jean Casaurang not to revoke his will of April 25, 1928, was oral, and therefore unenforceable under the statute of frauds. It is conceded that neither the agree-

ment to make reciprocal wills nor the agreement not to revoke the same was in writing.

Appellant contends that while the statute of frauds applies to an agreement to make a will, it does not apply to an agreement not to revoke a will already made. This contention is based upon the argument that the statute must be strictly construed, and that the matter of revocation of a will is not mentioned therein. Section 1973 of the Code of Civil Procedure makes certain agreements invalid unless the same or some memorandum thereof is in writing, and subdivision 7 of this section reads as follows: "An agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will."

This section is to be liberally construed with a view to carrying out the object thereof (sec. 4, Code Civ. Proc.). In *Monsen* v. *Monsen*, 174 Cal. 97 [162 Pac. 90], the court said: "It may not be amiss to point out the manifest danger of fraud, perjury, and injustice that may inhere in a recognition of the right to alter, by parol testimony, the course of disposition of the property of a decedent. It was, no doubt, a recognition of this danger that led the legislature to adopt the amendments to section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure, bringing agreements of this character within the scope of the statute of frauds."

Whether an agreement be to make a will or whether it be not to revoke one already made, the essence of the agreement is to have a will in existence at the time of the death of the promisor which designates the promisee as a beneficiary in accordance with the agreement. In either case, such an agreement is one to make a provision by will which is the situation specifically covered by the statute. An agreement not to revoke a will already made is just as much an agreement to make a provision for another by will as an agreement to make a will devising or bequeathing property to the promisee, and in our opinion the former is just as much within the statute as the latter.

It is next contended that the making of these reciprocal wills was such full performance of the contract as takes the contract to make a will and the contract not to

revoke the same out of the statute, and that therefore the will of April 25, 1928, was irrevocable. Appellant disclaims any reliance upon the claim of part performance and relies only upon the claim that the contract was fully performed by the making of the reciprocal wills, and that nothing remained to be done which could be done by either party. It will be noted that the complaint in fact alleges two oral agreements, the first of which was one to make reciprocal wills, which was later done, and the second, made after the wills were executed, being an agreement not to revoke or modify the same except by consent of the other party. Aside from the question as to whether the making of a will is a full performance of an oral agreement to make one, no performance, full or otherwise, appears here of the subsequent agreement not to revoke the will already made. We think no such full performance is here shown, as takes this agreement or these agreements out of the statute. (*Hughes* v. *Hughes,* 49 Cal. App. 206 [193 Pac. 144, 145]; *Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84, 86]; *O'Brien* v. *O'Brien,* 197 Cal. 577 [241 Pac. 861, 864].) In the case of *Hughes* v. *Hughes, supra,* the court said: ''The subsequent making of defendant's will in favor of the plaintiff, following the marriage, was not such part performance of the oral agreement to make such will as to take the alleged contract out of the statute of frauds.''

In *Zellner* v. *Wassman, supra,* the court said:

''Agreements to lease property by will must be reduced to writing or evidenced by some written note or memorandum, for, by virtue of the 1905 amendment to section 1624 of the Civil Code, they are within the purview of the statute of frauds. It is admitted that the agreement of the son to leave five thousand dollars by will herein sued upon was not reduced to writing and that no written note or memorandum thereof was made unless the will executed by deceased, a copy of which was attached to the complaint, fulfills the requirements of the statute in that respect. The will in question contained a simple bequest of five thousand dollars to plaintiff, without reference to any agreement in respect thereto. The preeminent qualification of a memorandum under the statute of frauds is 'that it must contain the essential terms of the contract, expressed with

such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties'. (5 Browne on Statute of Frauds, sec. 371.) Accordingly, it has been held in this state that an undelivered deed cannot be regarded as a sufficient memorandum of an oral agreement for the sale of land therein described when the deed is silent as to the terms of the alleged agreement and merely conveys the land from one party to another. (*Swain* v. *Burnette,* 89 Cal. 564, 570 [26 Pac. 1093].) In other jurisdictions the same reasoning has been applied to a will, for some reason ineffective upon the death of the testator, which makes no mention of the terms of the contract in pursuance of which it is alleged to have been executed. (*Allen* v. *Bromberg,* 163 Ala. 620 [50 South. 884]; *McClanahan* v. *McClanahan,* 77 Wash. 138 [Ann. Cas. 1915A, 461, 137 Pac. 479].) A potential factor in furtherance of fraud would be engendered were a will containing a simple bequest permitted to operate as evidence of a binding contract to make such a bequest. It must, therefore, be held that there is no written memorandum of the agreement here in suit.

"Nor does this case fall within the rule that the statute of frauds cannot be invoked in case of a completed oral contract (*Schultz* v. *Noble,* 77 Cal. 79 [19 Pac. 182]; *Colon* v. *Tossetti,* 14 Cal. App. 693 [113 Pac. 365]), for the contract now sued upon was not completed. The reason that the contract is now in court is because the decedent did not perform his part of the alleged agreement by causing to be in existence at the time of his death a will bequeathing five thousand dollars to plaintiff. The mere execution of a will was not a performance of the contract."

In *O'Brien* v. *O'Brien, supra:*

"It must be taken as the settled law in this state that by the amendment of 1905, adding subdivision 7 to section 1624 of the Civil Code, and by the corresponding provision of subdivision 7 of section 1973 of the Code of Civil Procedure as amended in 1907, 'An agreement . . . to devise or bequeath any property, or to make any provision for any person by will' is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent. . . .

"Prior to 1905 an oral contract to make a will was enforceable in a court of equity. (*Owens* v. *McNally*, 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]; *McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 Pac. 728]; *Wolfsen* v. *Smyer*, 178 Cal. 775 [175 Pac. 10].) The reason prompting the amendment of 1905 is aptly stated by the code commissioner in his note appended to section 1624, as follows: 'The change consists in the addition of subdivision 7. The cases in which it [is] sought to establish by parol evidence alleged agreements to provide for a person by will are becoming so numerous as to warrant the assumption that the reasons inducing the original enactment of the statute of frauds apply with especial force to agreements of this class and that they ought to be brought within that statute.' Since that amendment the effect of the new subdivision as applied to numerous and varying states of facts has been before the courts, but nowhere has it been decided, so far as we are advised, that the amendment should not be given the same force and effect as other provisions of the statute of frauds. Especially with reference to the new provision it has been held that neither subsequent marriage nor the execution of a will pursuant to an oral antenuptial agreement to make a will is such part performance as will relieve the contract from the operation of the statute."

In our opinion, the reasoning underlying these cases is especially applicable to such a case as this, where the main part of the oral agreement is the agreement not to revoke a will. In no manner has this agreement been executed and in fact it could hardly be fully executed prior to the death of the party making the will. This entire agreement was to devise property to the appellant and to make provision for her by will. The reasons for the statutory inhibition against an oral contract for that purpose are most cogent. The agreement here sought to be established seems to be exactly the sort of agreement which this portion of the statute was intended to prevent, and nothing in this action differentiates it from the usual case which this statute was designed to cover. While it may be true that equity may relieve a party from the effects of such a statute in a proper case and upon a sufficient showing, no equitable circumstance, such as fraud or the like, here appears to entitle the appel-

lant to any such equitable relief. As pointed out by the authorities we have cited, the mere failure to carry out the contract is not a sufficient showing of fraud. No more appears than that the appellant relied upon an oral agreement, and under the plain terms of the statute this is not sufficient.

Appellant maintains that her case falls squarely within the holding in *Freitas* v. *Freitas,* 31 Cal. App. 16 [159 Pac. 611]. In that case, there was an antenuptial agreement that in consideration of marriage the plaintiff would be made a beneficiary in a life insurance policy then issued. Following the marriage the other party caused the plaintiff to be named as beneficiary in the insurance policy and delivered the same to her. Subsequently, without her knowledge or consent, he secured possession of the policy and changed the beneficiary. It was held that she had irrevocably changed her position; that her husband had done all that he agreed to do; that there was a full execution of the contract; and that under the circumstances the plaintiff had an equitable right to retain the benefits she had received. In the instant case, the appellant had not irrevocably changed her position and her husband had not done all that he agreed to do. The most important part of the agreement, that not to revoke the will, remained unperformed and the appellant has shown no such equities as removes her from the effect of the statute. In our opinion the case relied upon is not controlling.

As one specification of error, appellant sets up in her opening brief that the court erred in vacating the order overruling the demurrers of Carrey and Martin. The point is supported by neither argument nor authority. This being pointed out by respondent, in her reply brief appellant merely restates the point without argument. As a matter of fact the previous order overruling these demurrers was not vacated, although another order was entered sustaining them. We think the question as to whether the court had the power to change its ruling on these demurrers is not sufficiently presented to require attention. (*Bell* v. *Southern Pac. Ry. Co.,* 144 Cal. 560 [77 Pac. 1124]; *Perry* v. *Ayers,* 159 Cal. 414 [114 Pac. 46].) A further consideration is the fact that the question is largely academic, so far as this case is concerned, as the real question at issue, and the only

question argued, is whether the other demurrer should have been sustained.

For the reasons given the order and judgment are affirmed.

Marks, J., and Allison, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 15, 1931.

Preston, J., and Curtis, J., dissented.