[Civ. No. 721. Fourth Appellate District.—March 4, 1932.]

GRACE LUDERS, Appellant, v. SECURITY TRUST & SAVINGS BANK (a Corporation), as Executor, etc., et al., Respondents.

Frank G. Tyrrell and F. M. Tyrrell for Appellant.

Lawler & Degnan and Massey & Massey for Respondents.

MARKS, J.—Appellant instituted her action in the court below seeking to enforce an alleged trust in all of the property of the estate of Marie Lagier, deceased, of which estate the Security Trust & Savings Bank is executor. The respondents, Sarilda Peebles, Louise Baille, Desire Guillemer and Emmanuel Guillemer were the legatees under a will of Marie Lagier which was admitted to probate.

Appellant and Marie Lagier, both of whom were widows, met in April, 1922, and their acquaintance ripened into a friendship. Appellant with her partner operated a small restaurant in the city of Los Angeles where deceased was accustomed to take her meals. In July, 1922, she requested appellant to sell her restaurant, live with her, enter her employ, undertaking the duties of managing decedent's apartment house, taking care of it, doing the manual labor of operating it, renting the apartments and collecting the rents and acting as the personal companion, attendant, nurse, servant, and chauffeur of deceased, in consideration for which, according to the testimony of appellant, deceased promised that "When I die, what I have is yours for your services. I won't pay anybody." Appellant accepted the terms of the offer and under this oral agreement entered the employ of deceased and continued in such employment up to about the fifteenth day of May, 1924, when the two women had a violent quarrel which resulted in Mrs. Lagier ordering appellant from her home and dispensing with her services.

In June, 1924, appellant filed an action for damages against Mrs. Lagier alleging a breach of the contract of employment and that the reasonable value of her services was $150 per month. She sought judgment in the sum of $3,300. Mrs. Lagier, besides answering the complaint for damages, filed a separate action against appellant whereby she sought to recover $150, evidenced by a promissory note, and the additional sums of $150 and $75, which she alleged had been loaned to appellant. About July 1, 1924, the two women effected a reconciliation. The suit of appellant for breach of contract was dismissed on July 10, 1924, and the suit of deceased against appellant was dismissed on July 14, 1924. The friendship between the two women was renewed but they never returned to their former relation wherein

appellant was fulfilling the terms of the previous oral contract between them. For about a year Mrs. Lagier employed a manager to operate her apartment house. Thereafter, and until her death, she operated it herself. Appellant did not return thereto except upon visits and on these occasions she sometimes performed personal services for Mrs. Lagier and also assisted in helping to clean apartments. She drove Mrs. Lagier's automobile and acted as her chauffeur when frequently requested so to do. The conversation between Mrs. Lagier and appellant which resulted in their reconciliation is detailed by appellant as follows: "Yes; I said, 'If I go back with you, it will be the same thing over again, and where do I come in?' She said, 'The will will always stand, I never will revoke that will, it is yours, what I have is yours at my death.' "

In June, 1923, deceased executed a will in which she bequeathed her property to appellant "for her faithful service to me". Appellant seeks to bring this case without the provisions of the statute of frauds by reason of this will and also by her partial performance of the terms of the contract with deceased. She maintains that the will was a sufficient note or memorandum in writing of the contract to take it out of the statute.

These two arguments of appellant have been resolved against her by the decisions of the Supreme and Appellate Courts of this state. These decisions were reviewed by this court in the recent case of *Cazaurang* v. *Carrey*, 117 Cal. App. 511 [4 Pac. (2d) 259, 261], where it was said: "We think no such full performance is here shown, as takes this agreement or these agreements out of the statute. (*Hughes* v. *Hughes*, 49 Cal. App. 206 [193 Pac. 144, 145]; *Zellner* v. *Wassman*, 184 Cal. 80 [193 Pac. 84, 86]; *O'Brien* v. *O'Brien*, 197 Cal. 577 [241 Pac. 861, 864].) In the case of *Hughes* v. *Hughes*, the court said: 'The subsequent making of defendant's will in favor of the plaintiff, following the marriage, was not such part performance of the oral agreement to make such will as to take the alleged contract out of the statute of frauds.' In *Zellner* v. *Wassman*, the court said: 'Agreements to leave property by will must be reduced to writing or evidenced by some written note or memorandum, for, by virtue of the 1905 amendment to section 1624 of the Civil Code, they are within the purview

of the statute of frauds. It is admitted that the agreement of the son to leave five thousand dollars by will herein sued upon was not reduced to writing and that no written note or memorandum thereof was made unless the will executed by deceased, a copy of which was attached to the complaint, fulfills the requirements of the statute in that respect. The will in question contained a simple bequest of five thousand dollars to plaintiff, without reference to any agreement in respect thereto. The pre-eminent qualification of a memorandum under the statute of frauds is "that it must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties". (5 Browne on Statute of Frauds, sec. 371.) Accordingly, it has been held in this state that an undelivered deed cannot be regarded as a sufficient memorandum of an oral agreement for the sale of land therein described when the deed is silent as to the terms of the alleged agreement and merely conveys the land from one party to another. (*Swain* v. *Burnette,* 89 Cal. 564, 570 [26 Pac. 1093].) In other jurisdictions the same reasoning has been applied to a will, for some reason ineffective upon the death of the testator, which makes no mention of the terms of the contract in pursuance of which it is alleged to have been executed. (*Allen* v. *Bromberg,* 163 Ala. 620 [50 South. 884]; *McClanahan* v. *McClanahan,* 77 Wash. 138 [Ann. Cas. 1915A, 461, 137 Pac. 479].) A potential factor in furtherance of fraud would be engendered were a will containing a simple bequest permitted to operate as evidence of a binding contract to make such a bequest. It must, therefore, be held that there is no written memorandum of the agreement here in suit. Nor does this case fall within the rule that the statute of frauds cannot be invoked in case of a completed oral contract (*Schultz* v. *Noble,* 77 Cal. 79 [19 Pac. 182]; *Colon* v. *Tosetti,* 14 Cal. App. 693 [113 Pac. 365]), for the contract now sued upon was not completed. The reason that the contract is now in court is because the decedent did not perform his part of the alleged agreement by causing to be in existence at the time of his death a will bequeathing five thousand dollars to plaintiff. The mere execution of a will was not a performance of the contract.' In *O'Brien* v. *O'Brien:* 'It must be taken as the

settled law in this state that by the amendment of 1905, adding subdivision 7 to section 1624 of the Civil Code, and by the corresponding provision of subdivision 7 of section 1973 of the Code of Civil Procedure as amended in 1907, ''An agreement . . . to devise or bequeath any property, or to make any provision for any person by will'' is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent. . . . Prior to 1905 an oral contract to make a will was enforceable in a court of equity. (*Owens* v. *McNally,* 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]; *McCabe* v. *Healy,* 138 Cal. 81 [70 Pac. 1008]; *Rogers* v. *Schlotterback,* 167 Cal. 35 [138 Pac. 728]; *Wolfsen* v. *Smyer,* 178 Cal. 775 [175 Pac. 10].) The reason prompting the amendment of 1905 is aptly stated by the code commissioner in his note appended to section 1624, as follows: ''The change consists in the addition of subdivision 7. The cases in which it (is) sought to establish by parol evidence alleged agreements to provide for a person by will are becoming so numerous as to warrant the assumption that the reasons inducing the original enactment of the statute of frauds apply with especial force to agreements of this class and that they ought to be brought within that statute.'' Since that amendment the effect of the new subdivision as applied to numerous and varying states of facts has been before the courts, but nowhere has it been decided, so far as we are advised, that the amendment should not be given the same force and effect as other provisions of the statute of frauds. Especially with reference to the new provision it has been held that neither subsequent marriage nor the execution of a will pursuant to an oral antenuptial agreement to make a will is such part performance as will relieve the contract from the operation of the statute.' In our opinion, the reasoning underlying these cases is especially applicable to such a case as this, where the main part of the oral agreement is the agreement not to revoke a will. In no manner has this agreement been executed and in fact it could hardly be fully executed prior to the death of the party making the will. This entire agreement was to devise property to the appellant and to make provision for her by will. The reasons for the statutory inhibition against an oral contract for that purpose are most cogent. The agreement

here sought to be established seems to be exactly the sort of agreement which this portion of the statute was intended to prevent, and nothing in this action differentiates it from the usual case which this statute was designed to cover. While it may be true that equity may relieve a party from the effects of such a statute in a proper case and upon a sufficient showing, no equitable circumstance, such as fraud or the like, here appears to entitle the appellant to any such equitable relief. As pointed out by the authorities we have cited, the mere failure to carry out the contract is not a sufficient showing of fraud. No more appears than that the appellant relied upon an oral agreement, and under the plain terms of the statute this is not sufficient.''

The will which deceased executed in 1923 did not ''contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties'' as required in the case of *Zellner* v. *Wassman, supra,* and was not a sufficient note or memorandum of the contract to bring this case without the provisions of the statute of frauds.

■ The trial court found that the will of 1923 had been revoked. Appellant complains of this finding as not supported by the evidence. An examination of the record discloses that the verified pleadings in *Luders* v. *Lagier* where appellant sought to recover damages for breach of contract, specifically allege that this will had been revoked by the deceased. A witness produced by appellant testified that during the summer of 1926 the deceased showed him a will, some of the terms of which were not contained in the will in favor of appellant, and in his presence destroyed this will by burning it. With this evidence before us we cannot conclude that this finding was not supported by any evidence. It further appears that about a month before her death, deceased had in her possession an holographic will which disposed of her property to the individual respondents now before this court. At about the same time a formal will was prepared by an attorney and duly executed by deceased and the holographic will destroyed. This formal will was the one admitted to probate.

■ Appellant complains that a number of the findings of the trial court are not supported by the evidence and that

others are contrary to it. The findings are unusually and unnecessarily full and complete and as to some of them the position of appellant may be correct. However, there are other findings which amply support the judgment. The findings complained of by appellant therefore become immaterial and do not furnish any ground for a reversal of the judgment. As was said in *Trout* v. *Ogilvie*, 41 Cal. App. 167 [182 Pac. 333, 334] : "If the contract alleged in the complaint be one that a court of equity will not enforce, it is immaterial that the finding that no such contract was made is not supported by the evidence. The rule is that it is immaterial that there is an erroneous finding upon an issue where, if the finding were otherwise, a different conclusion would not be necessitated."

The case has been ably and exhaustively briefed by counsel for both parties. It is not necessary to lengthen this opinion by considering any of the many other grounds for reversal urged by appellant or the other forceful arguments of respondent in support of the judgment. There was not a sufficient note or memorandum in writing signed by deceased to take the case without the provisions of the statute of frauds and no such performance of the parol contract shown as would waive the necessity of the writings required by law in cases of this kind.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 1, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 2, 1932.