[L. A. No. 14911. In Bank.—April 30, 1935.]

HENRY NOTTEN et al., Appellants, v. MARQUES B. MENSING et al., Respondents.

E. W. Howell and Sheridan, Orr, Drapeau & Bates for Appellants.

Don G. Bowker and James C. Hollingsworth for Respondents.

THE COURT.—Plaintiffs appeal from a judgment entered upon the sustaining of a demurrer without leave to amend

to their complaint. The action is one to enforce a constructive trust on certain property devised to defendants by the will of Carrie M. Notten, deceased, the plaintiffs being certain of the relatives of the husband of the deceased.

The general theory of the complaint is that plaintiffs were beneficiaries under mutual, reciprocal wills executed by John W. Notten and Carrie M. Notten, husband and wife, pursuant to an oral agreement to the effect that upon the death of either all of their property should go to the survivor and, upon the death of the survivor, to certain designated relatives of the parties, including plaintiffs; that after the execution of the wills and before they were revoked, the husband died; that the wife accepted in full the benefits of the husband's will; that after the death of her husband she revoked her will and executed a new will, leaving all of the property to defendants. The main question presented is whether, under the circumstances set forth in the complaint, the oral agreement therein alleged is enforceable, or whether such agreement is unenforceable because of the provisions of section 1624, subdivision 6, of the Civil Code, and section 1973, subdivision 6, of the Code of Civil Procedure, which sections provide that "an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will" must be in writing.

Before disposing of this question, it is necessary briefly to review the allegations of the complaint. So far as pertinent here, it alleges that for many years prior to 1921 John W. Notten and Carrie M. Notten were husband and wife, and childless; that John W. Notten was then about seventy-eight years of age and Carrie was about the same age; that they had acquired a small orchard in Ventura County upon which they lived; that they had executed an oil and gas lease on said premises; that oil and gas were discovered on their land and oil and gas were produced in paying quantities and gave promise of future revenue to the spouses; that in September, 1921, the spouses "being aged and without heirs of their bodies . . . and foreseeing a potential increase of their moderate means, commenced to consider the matter of making testamentary disposition of the same to their collateral heirs"; that John W. Notten had four brothers and sisters, living and dead, the deceased ones leaving numerous children; that Carrie M. Notten had five brothers and sisters,

one being deceased, leaving three children; that it was the desire of both husband and wife that, upon the death of either, the whole of their estate should go to the surviving one for life and then to the two lines of collateral heirs equally; that accordingly the ''spouses entered into a mutual and oral agreement to execute mutual or reciprocal wills devising said estate, first, to the surviving spouse, then in a particular way, to be set forth identically in each will. That in pursuance of said mutual agreement and in performance thereof the said spouses on the 30th day of September, 1921, each duly made and published in the presence of the other with his or her knowledge, consent and acquiescence, such a will'', copies of which are attached to the complaint as exhibits; that before either of the wills had been revoked, John W. Notten died on January 8, 1923; that Carrie M. Notten presented his will for probate and, pursuant to the terms thereof, his total estate was distributed to her; that she accepted the same ''and thereafter possessed, controlled and enjoyed it until her death''; that the approximate present value of the estate is $1,000,000; that Carrie M. Notten died on the 16th of October, 1933; that there was then presented a will executed by her February 3, 1929 (a copy of which is attached to the complaint as an exhibit), which will specifically revokes all former wills; that the 1929 will has been admitted to probate; that by the 1929 will Carrie Notten bequeathed to her blood relatives the sum of $540,000 in specific bequests and to certain of her blood relatives the residuum of her estate of equal value; that by the 1929 will she left to her husband's relatives specific bequests totaling $5,100; that plaintiffs are some of the lawful heirs of John W. Notten; that defendants are the legatees under the will of Carrie M. Notten.

The reciprocal wills are practically identical in terminology, John W. Notten naming his wife as sole legatee and she naming him as sole legatee. The provisions for the collateral kindred of the two spouses in the two wills upon the death of the survivors are identical. The two wills were executed on the same day and the same two persons witnessed both.

We are presented with the question as to whether such a complaint states a cause of action. It is obvious that the oral agreement set forth in the complaint, i. e., to make

reciprocal wills in a particular way, comes directly within the provisions of the statute of frauds above referred to. However, the present action is not one to have the mutual will of Carrie M. Notten probated, but to have a constructive trust declared on the property held by the legatees of Carrie M. Notten, in accordance with the provisions of the 1921 will. ■ It is clear that a will, even a mutual will, is ambulatory until death and hence may be revoked, notwithstanding an agreement not to revoke. (Sec. 23, Probate Code; *Estate of Rolls*, 193 Cal. 594 [226 Pac. 608].) However, even though such a mutual will may be revoked, where there is a valid agreement not to revoke, which agreement is fair and reasonable and adequately supported by consideration, equity will grant a sort of "*quasi*-specific performance" by making the parties who receive the estate constructive trustees for the intended beneficiaries under the revoked mutual will, in accordance with the terms of the contract. (*Wolf* v. *Donahue*, 206 Cal. 213 [273 Pac. 547]; see notes, 13 Cal. Law Review, 179; 28 Harvard Law Review, 237, 241.) This principle is recognized as the general rule in most jurisdictions. It is stated as follows in 69 Corpus Juris, page 1302, section 2725:

"The rule is well settled that, on the death of one of the parties to an agreement for mutual wills, leaving a will in accordance with the agreement, the survivor becomes estopped from making any other or different disposition of his property than that contemplated in such agreement, and his obligations under the agreement become absolutely irrevocable, and enforceable against him, at least where he avails himself of provisions of decedent's will in his favor, or accepts any benefits thereunder, even though, it has been held, his will is revoked by operation of law, as by his subsequent marriage; and his heirs, after his death, have no rights better than, or superior to, his own."

■ In this state, however, since 1905, such agreements, under the provisions of the statute of frauds above quoted, must be in writing. Generally speaking, since 1905, oral agreements to leave property by will, or not to revoke a will already made, are unenforceable. (*Luders* v. *Security T. & S. Bank*, 121 Cal. App. 408 [9 Pac. (2d) 271]; *Cazaurang* v. *Carey*, 117 Cal. App. 511 [4 Pac. (2d) 259].) The same two cases, and others referred to therein, hold that the execution of a will in accordance with the oral agreement,

which will does not expressly refer to the contract, does not constitute a note or memorandum sufficient to satisfy the statute of frauds. (See, also, note, 20 Cal. Law Review, 654.) The same cases also indicate that the execution of mutual wills, the death of one of the makers, and the acceptance of the benefits under such a will by the other, does not constitute a sufficient part performance to take the case out of the statute of frauds. (See, also, *Baker* v. *Bouchard,* 122 Cal. App. 708 [10 Pac. (2d) 468]; *Trout* v. *Ogilvie,* 41 Cal. App. 167 [182 Pac. 333]; *Forbes* v. *Los Angeles,* 101 Cal. App. 781 [282 Pac. 528].) This is contrary to the rule in some states. (See cases collected in 69 Cor. Jur., p. 1303, sec. 2728.)

However, the fact that the instant case does not come within the above two exceptions to the operation of the statute of frauds is not sufficient to dispose of the issues raised. There is a long line of authorities in this state to the effect that under the proper circumstances a party may be estopped to plead the statute of frauds. We are of the opinion that the facts pleaded in the complaint present a proper case for the application of that rule. It is our opinion that when two parties execute reciprocal wills pursuant to an oral agreement, and one of the parties dies before either will is revoked, and the other party accepts the benefit of the decedent's will, and then revokes, a constructive fraud sufficient to raise the estoppel has been practiced on the first decedent and on the beneficiaries of the oral agreement.

The leading case in this state holding that, under the proper circumstances, one may be estopped to plead the statute and that such doctrine applies to all of the provisions of the statute of frauds is *Seymour* v. *Oelrichs,* 156 Cal. 782, 794 [106 Pac. 88, 94, 134 Am. St. Rep. 154]. It is there stated:

"The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the con-

summation of a fraudulent scheme'. (2 Pomeroy's Equity Jurisprudence, sec. 921.) It was said in *Glass* v. *Hulbert*, 102 Mass. 24, 35 [3 Am. Rep. 418] : 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.' This statement has been accepted as setting forth a plain and satisfactory ground for equitable jurisdiction, together with a clear indication of the proper limitation of its exercise. (See 5 Browne on Statute of Frauds, sec. 457a.) In the section last cited, Mr. Browne says: 'A plaintiff . . . must be able to show clearly . . . not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, to so far alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense. After proof of this, the court may well be justified in using its undoubted power, in cases of equitable estoppel, to refuse to listen to a defendant seeking to deny the truth of his own representations previously made.'

"We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, or for saying otherwise than as is intimated by Mr. Pomeroy in the words already quoted, viz., that it applies 'in every transaction where the statute is invoked'. It is a general equitable principle, a

part of the broader equitable doctrine stated in *Dickerson* v. *Colgrove,* 100 U. S. 578, 580 [25 L. Ed. 618], and quoted therefrom in *Carpy* v. *Dowdell,* 115 Cal. 677, 687 [47 Pac. 695], as follows: 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.' ''

Many other cases could be referred to where the facts have been held sufficient to raise the estoppel. (See *Fleming* v. *Dolphin,* 214 Cal. 269 [4 Pac. (2d) 776, 78 A. L. R. 585]; *Peek* v. *Peek,* 77 Cal. 106 [9 Pac. 227, 11 Am. St. Rep. 244, 1 L. R. A. 185]; see, also, cases collected in 20 Cal. Law Review, 663; note, 75 A. L. R. 650.)

In order to raise the estoppel, fraud in some form is essential, but it is not required that an actual intent to defraud or mislead exist—all that is required is that there exist ''a fraud inhering in the consequences of thus setting up the statute''. (*Seymour* v. *Oelrichs, supra,* p. 796.) In *Anderson* v. *Hubble,* 93 Ind. 570, 576 [47 Am. Rep. 394], (which case is quoted with approval in the Seymour case, *supra*), the rule is stated as follows: ''It is not necessary, in order to the existence of an equitable estoppel, that there should exist a design to deceive or defraud. The person against whom the estoppel is asserted must, by his silence or his representation, have created a belief of the existence of a state of facts which would be unconscionable to deny, but it is not essential that he should have been guilty of positive fraud in his previous conduct. . . . All that is meant in the expression that an estoppel must possess an element of fraud is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. . . . There need be no precedent corrupt motive or evil design.''

Although in the present case fraud is not alleged as a conclusion, the facts from which that conclusion necessarily follows are alleged. The complaint, although not a model of pleading, sufficiently alleges the facts necessary to raise the estoppel. The complaint alleges the making of the oral agreement to leave the property to their respective

collateral kindred upon the death of the survivor; the making of the reciprocal wills pursuant to such agreement; the death of the husband before either will was revoked; the acceptance by the wife of the benefits under her husband's will; the wife's revocation of the old will and the execution of the new will in violation of the oral agreement. These facts clearly constituted a change of position and reliance on the agreement, under the cases cited, sufficient to raise the estoppel.

We are well aware that in such cases the temptation is strong for those who are so inclined to fabricate evidence giving color to the claim that the parties entered into such an oral agreement as is here alleged. On the trial on the merits, the burden rests on the plaintiff to prove the oral agreement by full, clear and convincing evidence. (*Rolls* v. *Allen,* 204 Cal. 604 [269 Pac. 450]; 69 Cor. Jur., p. 1304, sec. 2731.) The mere fact that the wills are reciprocal or contain similar or identical provisions, or that they were executed at the same time and before the same witnesses, is not of itself sufficient evidence of the alleged oral agreement. (*Rolls* v. *Allen, supra; In re Weir's Estate,* 134 Wash. 560 [236 Pac. 285].) However, if such agreement is proved by full, clear and convincing evidence, such agreement should be enforced according to its terms.

The special grounds of the demurrer need receive but little consideration. Apparently it is respondents' contention that the alleged oral agreement is not sufficiently certain to warrant specific performance. It is also urged that it is not alleged that the consideration is adequate. The agreement, as alleged, is sufficiently certain, and the exact nature of the consideration moving to Carrie M. Notten (reciprocal promise from her husband) is set forth. It is not necessary that a complaint state in so many words that there was an adequate consideration for the contract or that the contract was just and reasonable. Standing alone, such allegations constitute but mere conclusions. It is sufficient to allege the facts from which these conclusions may be drawn. (*Wolf* v. *Donahue, supra* (206 Cal. 213, p. 219 [273 Pac. 547]); *Magee* v. *Magee,* 174 Cal. 276 [162 Pac. 1023].)

Respondents also attack certain allegations of the complaint as being uncertain and ambiguous. Although, as already stated, the complaint is not a model of pleading, it is

our opinion that the allegations challenged are sufficiently clear.

For the foregoing reasons, the judgment appealed from is reversed.

Rehearing denied.