[Civ. No. 32771. Second Dist., Div. Five. Feb. 18, 1969.]

Estate of ROBERT F. SISK, Deceased. HOUSTON I. FLOURNOY, as State Controller, Petitioner and Appellant, v. MARIAN SISK STEWART, Objector and Respondent.

Joseph D. Lear, Walter H. Miller, and Phyllis Kelly Fairbanks for Petitioner and Appellant.

Robert A. Stewart, Jr., for Objector and Respondent.

STEPHENS, J.—This is an appeal by the Controller of the State of California from an order of the superior court sustaining respondent's objections to the report of the inheritance tax appraiser filed in the probate proceeding, determining[1] that no inheritance tax was payable upon the transfer of the residue of the decedent's estate to respondent, the decedent's only daughter and sole heir.

Prior to and on November 14, 1948, Robert F. Sisk and Cepha Day Sisk were husband and wife. They had one child, Marian Sisk (Stewart), born December 23, 1929.[2]

The facts are that on November 14, 1948, Robert and his spouse, Cepha, made mutual wills and orally agreed with each other that their property should be disposed of as provided in said mutual wills, and that said mutual wills should not be changed or revoked. By the terms of said oral agreement and said mutual wills, all of the property of either was left to the survivor, and all of the property of the survivor was distributable to Marian absolutely at age 35. Cepha died on November 17, 1957, and in reliance on said agreement, had not changed or revoked her said mutual will. All the estate of Cepha passed as community property to Robert, and Robert accepted and enjoyed the benefits of said agreement.[3] The 1948 will of Cepha was never offered for probate. On or about May 9, 1960, Robert made a holographic will revoking his mutual will. He died on February 25, 1964, and administration of his estate through probate was commenced. Robert's will of 1960 was admitted to probate, with Title Insurance

---

[1]The phraseology of the respondent in her brief on appeal is adopted for convenience.

[2]Hereinafter, Robert Sisk will be referred to as either Robert or decedent; Cepha Sisk will be referred to as Cepha; and the daughter (respondent here), as Marian.

[3]The agreement bound Cepha to will to Robert the property over which she had power of disposition. Relying upon such agreement, she did not exercise her right to dispose of the property to a trustee other than Robert. The judgment resulting from an action to impose a constructive trust establishes that Robert took subject to such conditional trust, and not by gift absolute, as would appear from the wording of Cepha's will. (This action is discussed subsequently.)

and Trust Company acting as executor and designee-trustee of the residue of the estate under said will.[4]

In the course of probate, Marian filed a Petition to Determine Heirship (Prob. Code, § 1080), and it was thereupon decreed ". . . that Robert F. Sisk, decedent above named, died testate on February 25, 1964 leaving as his only heir at law his daughter Marian Sisk Stewart, petitioner herein; that said decedent left a will which has been duly admitted to probate herein, and by the terms of said will the whole of said estate is devised and bequeathed as follows: A cash legacy of $5000.00 to Seluria McVea; a cash legacy of $1000.00 to Blanche Carter; and all the rest and residue to Title Insurance and Trust Company in trust to be held and administered by it in the usual and customary manner as trusts are now being administered by it with assets comparable to said estate. Said trustee shall pay $100.00 per month to the decedent's mother, the said Minny F. Cover, and the remainder of income from said trust to the decedent's daughter, Marian Sisk Stewart, during her lifetime. No one shall have the power to dispose of, encumber or hypothecate any interest in said decedent's estate. Said trust shall terminate upon the death of said Marian Sisk Stewart, whereupon the remainder of said decedent's estate shall be distributed to the heirs or legatees of the said Marian Sisk Stewart or to her executor or administrator for administration in her estate."

Marian thereafter filed an action against the trustee, Title Insurance and Trust Company, seeking to impose a constructive trust upon the property to be held by Title Insurance as trustee. As a result of this action, a judgment issued, declaring in effect that the bequest of the bulk of Robert's estate, which would have gone into the spendthrift trust under the terms of the will and decree in the heirship proceeding, was impressed with a constructive trust for the benefit of its "absolute equitable owner," Marian, and that "after payment of debts, taxes and expenses of administration shall be distributed to [her]" except for specified bequests of $5,000 and $1,000, about which there was and is no issue.[5]

[4]This portion of the statement of facts is taken substantially verbatim from the "Findings of Fact" filed in support of the judgment upon an action to impose a constructive trust upon the assets (residue) to be distributed to the trustee at close of administration. (This action is discussed subsequently.)

[5]The trial judge in the action to impose a constructive trust, Judge Arthur K. Marshall, was not the probate court judge from whose order this appeal has been taken.

Subsequently, the bulk of Robert's estate was distributed *directly to Marian.* Consent to such distribution was made with the reservation that it "shall not be deemed to be an acquiescence by the State Controller with respect to any matter in said petition which may be an issue in the determination of the inheritance tax in this estate."

██ Two issues are raised on appeal: (1) Did the oral agreement between Robert and Cepha give rise to a transfer by administration through the estate of Robert which is taxable under California law? (2) Does the fact that the agreement was enforced by separate judgment outside of probate affect the imposition of the inheritance tax? We answer the first stated issue in the affirmative, and the second, in the negative. (In determining the issues here, pertinent sections of the Revenue and Taxation Code, which shall be set forth in the footnotes here, shall hereinafter be referred to solely by number. All references hereinafter to "the code" shall mean the Revenue and Taxation Code unless otherwise noted.)

As is readily apparent by reference to sections 13551, 13553 and 13554 [6] (in force and effect at the time of Cepha's death in 1957), even had Cepha's last will been probated, all of the property passing to Robert being community, no different inheritance tax situation would have then prevailed. Also, this appears true even had the State Controller been made aware of the agreement between Cepha and Robert, which we may assume was as binding at the time of Cepha's death as it was at the time of Robert's demise. (Cf. *Notten* v. *Mensing,* 3

[6]Section 13551: "Upon the death of a husband:

"(a) At least one-half of the community property is subject to this part.

"(b) The one-half of the community property which belongs and goes to the surviving wife pursuant to Section 201 of the Probate Code is not subject to this part.

"(c) All of the community property passing to anyone other than the wife is subject to this part."

Section 13553: "Upon the death of a wife the one-half of the community property which belongs to her surviving husband pursuant to Section 201 of the Probate Code is not subject to this part. Likewise, the community interest which goes to a surviving husband pursuant to Section 201 of the Probate Code in the absence of his wife's testamentary disposition of the interest to another, or which passes to him under her will, is not subject to this part." (Repealed 1961.)

Section 13554: [*Inter vivos* transfers]: "Where community property is transferred within the provisions of Chapter 4 of this part other than by will or the laws of succession from one spouse to the other:

"(a) Property transferred up to a value not exceeding one-half of the clear market value of the community is not subject to this part if the wife is the transferee.

"(b) None of the property transferred is subject to this part if the husband is the transferee." (Amended in 1961.)

Cal.2d 469, 477 [45 P.2d 198], dealing with proof of the oral agreement.) Certainly, the taxable value of Marian's highly contingent interest at the time of Cepha's death would be nearly impossible to ascertain. Marian's interest was doubly contingent: i.e., (1), upon her surviving Robert; and (2), upon Robert's not exhausting the whole of the estate during his lifetime (which he had the right to do under the agreement). (§§ 13311, 13312, 13401, and 13402.)[7]

In *Estate of Rath*, 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836], under somewhat similar facts to those in the instant case, the court fixed the inheritance tax of contingent beneficiaries in the estate of the spouse first to die. On pages 405-406 of *Rath*, the court said: "The Inheritance Tax Act reaches transfers by instruments which are nontestamentary, as well as those which arise by will, or by intestate succession. [Citation.] Distribution may be ordered only in accord with the instrument which is testamentary. But for purposes of fixing the inheritance tax beneficial succession is the measure. For such purpose we are of the view that the court may consider agreements extrinsic to the will which limit the absolute estate devised by will." (See §§ 13302-13306, inclusive.)[8]

But whether or not an inheritance tax could have been imposed upon Marian's contingent interest, we need not now

[7]Section 13311. " 'Market value,' in respect to property included in any transfer, means the market value of the property as of the date of the transferor's death, whether or not the transfer was made during the lifetime of the transferor."

Section 13312: " 'Clear market value' means the market value of any property included in any transfer, less any deductions allowable by this part."

Section 13401: "An inheritance tax is hereby imposed upon every transfer subject to this part."

Section 13402: "The tax is computed upon the clear market value of the property transferred, but only upon that portion in excess of the exemptions allowable on the date of the transferor's death, and at the rates which are then in effect."

"The tax is computed in accordance with this section whether or not the transfer involved was made during the lifetime of the transferor."

[8]Section 13302: "Except where the context otherwise requires, the definitions given in this chapter govern the construction of this part."

Section 13303: " 'Estate' or 'property' means the real or personal property or interest therein of a decedent or transferor, and includes all of the following:

" (a) All intangible personal property of a resident decedent within or without the State or subject to the jurisdiction thereof.

" (b)    .    .    .    .    .    .    .    .    ."

Section 13304: " 'Transfer' includes the passage of any property or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise."

Section 13305: " 'Decedent' or 'transferor' means any person by or

concern ourselves[9] since during the hearing relative to the fixing of inheritance tax, the State Controller conceded that one half of the decedent's estate was not subject to the inheritance tax. We therefore concern ourselves with the question of whether the one half having never been subject to disposition by Cepha but now passing to Marian by virtue of the constructive trust is taxable. The fact that Robert took Cepha's community property share other than through her will (Prob. Code §§ 201, 202; *Estate of Nash,* 256 Cal.App.2d 560, 561 [64 Cal.Rptr. 298]) is unimportant, since the agreement impressed its terms upon that share as well as upon Robert's share. (Hereinafter, reference will be made to "Cepha's one half" and "Robert's one half," the total of which constituted the community assets of Cepha and Robert as of the date of Cepha's death.)

Since inheritance taxes are statutory, just what manner of acquisition of property is taxable is governed by the Revenue and Taxation Code. Section 13401 imposes an inheritance tax upon every *transfer* subject to the code, and section 13304 defines "transfer" as including the passage of any property interest, in possession or enjoyment, present or future, in trust or otherwise. Thus it appears that the code seeks to cover every conceivable acquisition by one person from another by succession.[10] In *Kirkwood* v. *Bank of America,* 43 Cal.2d 333, 338-339 [273 P.2d 532], it is stated: "The California inheritance tax is not a property tax but is a succession tax, imposed by reason of the beneficial succession to property upon the death of another. (24 Cal.Jur. § 395, pp. 424-425; *Estate of Rath,* 10 Cal.2d 399, 405 [75 P.2d 509, 115 A.L.R. 836].) It applies to transfers by will or intestate succession and in order to prevent tax evasion, it also applies to certain *inter vivos* transfers which are testamentary in character. With regard to these latter transfers, the legislative purpose is expressly declared in section 13648 of the Revenue and

---

from whom a transfer is made, and includes any testator, intestate, grantor, bargainor, vendor, assignor, donor, joint tenant, or insured."

Section 13306: " 'Transferee' means any person to whom a transfer is made, and includes any legatee, devisee, heir, next of kin, grantee, donee, vendee, assignee, successor, survivor, or beneficiary."

[9]We do not here determine whether the State Controller may seek reopening for the purpose of revising the inheritance tax in Cepha's case upon the theory that there was concealed from him the agreement here imposing a constructive trust upon the property passing to Robert from Cepha's estate.

[10]Section 13601: "A transfer by will or the laws of succession of this State from a person who dies seized or possessed of the property transferred while a resident of this State is a transfer subject to this part."

Taxation Code to be 'the intent . . . to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.' '' (See § 13601.)

But is this a transfer within the code at all? Marian states her acquisition of the assets are by judgment, and not by inheritance, and hence not within the purview of the code. On the other hand, the State Controller urges that the transfer is one contemplated under the taxing sections relating to *inter vivos* gifts. (See §§ 13641-13648, inclusive.)[11]

*Bank of California* v. *Superior Court,* 16 Cal.2d 516 [106 P.2d 879] was an action by a legatee against the estate of Sara M. Boyd and all beneficiaries under the will being probated to enforce a contract by which decedent agreed to leave

[11]Section 13641: ''If a transfer specified in this article is made during lifetime by a resident, or is made during lifetime by a nonresident of property within this State, for a consideration in money or money's worth, but the transfer is not a bona fide sale for an adequate and full consideration in money or money's worth, the amount of the transfer subject to this part shall be the excess of

''(a) the value, at the date of transferor's death, of the property transferred, over

''(b) an amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the consideration received in money or money's worth for the property transferred bears to the value, at the date of transfer, of the property transferred.''

Section 13642: ''A transfer conforming to Section 13641 and made in contemplation of the death of the transferor is a transfer subject to this part, but no such transfer shall be deemed or held to have been made in contemplation of death if made more than three years prior to the death of the transferor.

'' 'Contemplation of death' includes that expectancy of death which actuates the mind of a person on the execution of his will. The term is not restricted to that expectancy of death which actuates the mind of a person making a gift causa mortis.''

Section 13643: ''A transfer conforming to Section 13641 and made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part.''

Section 13644: ''A transfer conforming to Section 13641 and under which the trasnferor expressly or impliedly reserves for his life an income or interest in the property transferred is a transfer subject to this part. Such a reservation shall be conclusively presumed where the transferor retains the possession or enjoyment of the income or interest in the property transferred until his death.''

Section 13645: ''A transfer conforming to Section 13641 and under which the transferee promises to make payments to or care for the transferor is a transfer subject to this part.''

Section 13646: ''A revocable transfer in trust conforming to Section 13641 is a transfer subject to this part.''

Section 13647: ''A transfer conforming to Section 13641 and made as an advancement is a transfer subject to this part.''

Section 13648: ''It is hereby declared to be the intent and purpose of this part to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.''

her entire estate to plaintiff-legatee.[12] The court there stated (pp. 524-525) : ''The nature of such an action has been frequently discussed by the courts. The probate court cannot, of course, take cognizance of the contract [see pp. 405-406, *Estate of Rath, supra,* on distribution versus tax], and an equity court cannot compel the making of a will. Hence, there is no specific performance of the contract in the strict sense. But equity gives relief which is the equivalent of specific performance. Though the estate may be probated and the property distributed accordingly, the court will, in an action by the promisee, impose a constructive trust upon any particular property in the hands of the individual distributee. This relief is sometimes called '*quasi* specific performance', since it accomplishes the substantial result of enforcement of the contract. (See *Notten* v. *Mensing,* 3 Cal.2d 469, 473 [45 P.2d 198, 200] ; *Rundell* v. *McDonald,* 62 Cal.App. 721, 728 [217 P. 1082] ; Atkinson on Wills, p. 172.)

''The action in these cases is against the distributee personally, and not against the estate; and it is independent of the will and probate proceeding. Each distributee is individually held as a constructive trustee solely on the property which came to him, and none is interested in the granting or denial of similar relief as to any other. . . . Unlike the situations discussed above, in which any judgment would necessarily affect the rights of the absent persons, the case here is one where plaintiff may litigate her claim against the appearing defendants alone and obtain a decree which binds them alone. The absent defendants, not being before the court, will not be bound by the judgment, whether favorable or unfavorable, and their property interests will not be affected.

''This analysis finds complete support in the well-considered case of *Rundell* v. *McDonald, supra,* where all of the heirs of the intestate were named as defendants, but the action was dismissed as to some of them. The court said (p. 728) : 'If, on the other hand, as appellant contends, an action such as this can be maintained only against the heirs, appellant nevertheless is in no position to complain of any defect of parties defendant, since the decree cannot injudiciously affect the other heirs. Though the heirs succeeded to the legal title as tenants in common, they held their respective undivided moieties by several and distinct titles . . . The theory on

[12]Primarily the case dealt with necessary and indispensable parties defendant in that as to some defendant-beneficiaries, plaintiff did not obtain service of summons, and sought to proceed only as against the executor and residual legatee. As to this facet of the case, we are not here concerned.

which the courts proceed, therefore, is to fasten a trust on the property in favor of the promisee, and to enforce such trust against the heirs of the deceased. Under this theory each heir holds the title to which he has succeeded in trust for the promisee. In the instant case the effect of the judgment against appellant as the surviving husband was to fasten a trust on the title to which he succeeded and to compel a conveyance of that title to respondent.' "

It is necessary to keep in mind that the court in the *Bank of California* case was not considering an inheritance tax problem, but rather one of enforcement of contract. Thus, though it may appear to be in conflict with *Rath*, there is no conflict in fact.

As noted, if there is to be taxed an *inter vivos* gift in the instant circumstance, such gift must be of Robert's one half. (As to its value computation, see section 13951.)[13] Neither the State Controller nor respondent is of the belief that there are existent California authoritative expressions determinative of this issue. However, despite some fact differences between our case and the case of *Estate of Vai*, 65 Cal.2d 144 [52 Cal.Rptr. 705, 417 P.2d 161], the logic expressed in *Vai* is sound authority upon which to base our conclusion.

In *Vai*, by agreement between husband and wife, the husband was to provide in his will that a sufficient amount of property be left in trust for their daughter to support her as long as she lived. The husband carried out the obligation imposed upon him by the agreement and left the residue of his estate in a trust for the daughter. The husband died and the cost of supporting the daughter up to the time of her death was calculated to be the capitalized amount of $515,341.56. The value of the residue of the husband's estate considerably exceeded that amount. The issue was limited to the taxability of the capitalized amount. The executors contended that the money left for the daughter's support was not taxable because it was transferred to her pursuant to the agreement, rather than "by will," and that as soon as the agreement was enforceable, the daughter had a vested right to the support which was enforceable without regard to the will, and the will was merely the instrument by which the obligation was per-

[13]Section 13951: "For the purpose of this part, the value of property included in any transfer subject to this part, whether or not the transfer was made during the lifetime of the transferor, is the market value of the property as of the date of the transferor's death."

formed. The court held that to the extent the obligation was supported by adequate consideration within the meaning of the inheritance tax law, and the obligation would have been enforceable without regard to the provisions of the will, it is not taxable as a "transfer by will." The result of *Vai*, then, is to hold that a creditor (or one in similar position holding a valid obligation from decedent), when having the debt discharged through a will, is not a transferee within the meaning of the code, and hence the payment is not subject to inheritance tax to the extent of the amount of the debt. In disposing of the rule pronounced in *Estate of Grogan*, 63 Cal.App. 536 [219 P. 87] to the effect that *any* transfer by will is taxable, the court in *Vai* said (pp. 151-152) : "We conclude that the foregoing unequivocal rule of *Grogan* must be disapproved, for it makes the imposition of the tax dependent upon form rather than substance. The inheritance tax is imposed on the *beneficial* succession to property. (*Estate of Barter* (1947) 30 Cal.2d 549, 557 [184 P.2d 305] ; *Estate of Madison* (1945) 26 Cal.2d 453, 458 [159 P.2d 630].) *Grogan* holds that everything in the nature of a change of ownership effected through a will is taxable because the tax is on the *vehicle* carrying the right rather than on the right itself and that, therefore, a bequest in a will in payment of a debt is subject to a tax. The anomalous result of this rule is that a tax must be levied whenever a testator provides in his will that a creditor is to receive a stated sum in payment of a debt owed by the testator, whereas the tax would be avoided by the mere failure of the testator to specify that the debt be paid, requiring the creditor to receive payment by means of filing a claim against the estate. The Legislature could not have intended to make the imposition of the tax depend upon such fortuitous considerations.

"*Moreover, as the executors correctly argue, acceptance of the rule in Grogan would place a premium on the violation of agreements similar to the one involved here. If John had breached his agreement and failed to provide in his will for Madeline's support and she had recovered the value of her life estate in an action for damages against the estate, the amount of her recovery would not be, under Grogan, a transfer of property 'brought about by means of a will' and, presumably, no tax liability would attach.*[5] As suggested

"[5]The Controller relies on *In re Kidd's Estate* (1907) 188 N.Y. 274 [80 N.E. 924], for the proposition that if Madeline had sued the estate to recover the amount to which she would have been entitled under the property settlement agreement, she would nevertheless have been required

above, when the testator provides in his will for the payment of a valid obligation supported by adequate consideration within the meaning of the inheritance tax law, and the obligation would have been enforceable without regard to the provisions of the will, it is erroneous to conclude that the payment is taxable as a 'transfer by will.' The case of *Estate of Grogan* (1923) *supra*, 63 Cal.App. 536, is disapproved insofar as it is inconsistent with the views expressed herein. [Footnote 6 omitted.]

"As a result of this conclusion, we must also hold that the provisions of sections 13601-13603(a) of title 18 of the California Administrative Code, which are in accord with the *Grogan* rule, do not represent a correct interpretation of legislative intent. [Footnote 7 omitted.]" (Italics added except where underscored.)

Respondent urges the application of *Vai* as she understands the rule there expressed. She reads *Vai* to hold that "no actual transfer of property occurred during the testator's lifetime" (65 Cal.2d at p. 155), but that the transfer by his will was not taxable to the extent that valuable consideration required enforcement of the bequest. The respondent misses the true meaning of *Vai*. As we have already noted, *Vai* recognized the daughter as a third party beneficiary creditor of an obligation paid for by her mother and extinguished by provision in her father's will, it acting merely as the conduit through which to satisfy the creditor.[14] Such is not the

---

to pay an inheritance tax on the sum she recovered. In *Kidd*, a testator failed to carry out the terms of an agreement to leave property to a stepdaughter in his will, and she successfully prosecuted an action to recover the property which he had agreed to convey to her. It was held that she was required to pay an inheritance tax on the amount of the judgment because she would have been subject to the tax if the decedent had performed his agreement. *If Grogan is correct in holding that the basis on which the inheritance tax is imposed is that a will is used as the means of carrying out the testator's intention, it would seem to follow that if the beneficiary receives the property by means of a court judgment rather than under the will, the property is not taxable as a transfer by will.* This distinction was recognized in *In re Gould's Estate* (1898) *supra*, 156 N.Y. 423 [51 N.E. 287], a case upon which the Controller also relies, in which it was stated that if the beneficiary of a contract to make a will had elected to recover by bringing a suit against the estate on the basis of the contract rather than by accepting the bequest in the will, the amounts recovered in such a suit would not have been subject to the tax because there would have been no transfer by will." (Italics added except where underscored.)

14"It is true that Madeline's resources would be the same whether she is a creditor or a legatee, but only because in the present case she fortuitously occupies the role of residuary legatee and at the same time a

instant case. Here, there is applied (by the agreement) án estoppel upon decedent from disposing of his assets (including Cepha's one half) to anyone other than Marian. Thus we see that Robert took Cepha's one half subject to and limited by the conditions of his agreement with her. He was estopped to alter that agreement, and his one half became burdened with that same obligation and limitaion. True, he had the right of user of both halves during his lifetime, even to the point of the exhaustion of both halves, but when his right to use and to consume terminated, the beneficial use transferred to Marian. The trust which became irrevocable at the time Robert succeeded to Cepha's one half included both Cepha's and Robert's halves. This irrevocable right to such of the property as remained at the time of Robert's death was at all times in Marian from the instant of Cepha's death to the time of Robert's death. The conditional gift was made in Robert's lifetime, and was therefore a transfer *inter vivos*, taking effect at the time of his death. In *Estate of Barter,* 30 Cal.2d 549, 556 [184 P.2d 305], where an event dehors the will determined the transferee, it was stated: "The inheritance tax is not a tax on the property of the decedent but is an excise imposed on the privilege of succeeding to the property upon the death of the owner. (*Estate of Watkinson,* 191 Cal. 591, 598 [217 P. 1073]; *Estate of Letchworth,* 201 Cal. 1, 5 [255 P. 195]; *Cohn* v. *Cohn,* 20 Cal.2d 65, 67 [123 P.2d 833].) In the light of such definition, the assessment of the tax against a trust estate is not to be governed solely by the language of the will, but also by such events as affect the beneficial succession to the estate." Thereafter the court referred with approval to the holding in *Estate of Rath, supra.* The latest expression confirming the taxing authority's right to consider matters extrinsic to a will and approve the rule of *Rath* is *Estate of Callnon,* 70 Cal.2d 150, 161 [74 Cal.Rptr. 250, 449 P.2d 186] : " 'The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and

posture similar to that of a creditor insofar as John received consideration for his promise to leave property to her. Section 13981 could not have been intended to penalize her merely because she receives property in this dual capacity. We conclude, therefore, that the word 'transfer' as used in this section was not intended to relate to a situation in which the beneficiary has a right to receive the transfer independently of the will.'' (*Estate of Vai,* 65 Cal.2d 144 at p. 153 [52 Cal.Rptr. 705, 417 P.2d 161].)

beneficial ownership, is not binding except for tax purposes as between those who claim the estate, whether as heirs, legatees, or beneficiaries of a trust extrinsic to the will.' (*Estate of Rath* (1937) 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836]; accord: *O'Farrell* v. *American Trust Co.* (1957) 149 Cal.App.2d 691, 695 [309 P.2d 60].)''

In both Robert's 1948 will and 1960 will, the testamentary trust set forth therein provided for distribution to the Title Insurance and Trust Company, with Marian as *a* beneficiary. The fact that her beneficial interest was sought to be reduced by the 1960 will, and in such manner as to be declared void in that Robert was adjudged estopped from such change, in no way changed the directive of Robert that his estate be distributed to the trust.

The taxability of an *inter vivos* transfer is determined by the limitations imposed on the property at the death of the transferor. (*Estate of Thurston,* 36 Cal.2d 207, 214 [223 P.2d 12]: ''If the control or interest is retained until the transferor's death, the tax is imposed as if the transferor had remained the owner of the property until his death, and disposition of the property had been through his estate.'') Nor does the fact that such a number of years passed from the date of the making of the 1948 will to the date of Robert's death, thus making the transfer to the trustee an idle act. change the designation of distributee. Thus, the transfer of the assets of the estate was through the conduit of Robert's estate, ''subject to administration,'' with the trustee holding bare legal title for Marian.[15]

The trial court[16] in its Findings of Fact in the action to impose a constructive trust upon the property in question succinctly directs us to the proper conclusion. There, in its finding No. 4, it states in part: ''Plaintiff [Marian] is his [Robert's] sole heir, and is the only person interested in his estate, . . .''

The transfer herein accomplished is one subject to the inheritance tax in accordance with the petition of the State Controller (subject to verifying the accuracy of computa-

---

[15]There is no merit to respondent's argument that *Estate of Clarke,* 66 Cal.2d 142 [56 Cal.Rptr. 897, 424 P.2d 337] and *Estate of Radovich,* 48 Cal.2d 116 [308 P.2d 14] prohibits the State Controller from looking to the result rather than to form.

[16]See footnote 5, *supra.*

tion).[17] The order thereon, being that appealed from, is reversed, and the cause is remanded with the direction that the probate court modify its findings and order by imposing inheritance tax to conform to this opinion.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied March 12, 1969, and respondent's petition for a hearing by the Supreme Court was denied April 17, 1969.

---

[17]Respondent urges that the trial court findings in the instant case are binding upon us. Where the facts are not in dispute, we are not bound by findings not supported by the evidence, and where findings seek to include conclusions of law, they are not controlling.