[Civ. No. 2220. Fourth Appellate District.—May 17, 1938.]

In the Matter of the Estate of IVAN B. HASELBUD, Deceased. ANNA N. HASELBUD, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., et al., Respondents.

Irvine P. Aten and Richard V. Aten for Appellant.

Chester R. Andrews, John J. Gallagher and Harvey, Johnston & Baker for Respondents.

HAINES, J., *pro tem.*—Ivan B. Haselbud, a resident of Fresno County on December 12, 1922, being then unmarried, made a will devising and bequeathing his whole estate to the Security Trust Company of Bakersfield to be held in trust for his sister, respondent Lois Fay Haselbud Morris, for a period of ten years or such part thereof as she should live, the trust at the end of such time to terminate and the *corpus* of the property to be turned over to such sister, if still living, otherwise to the decedent's nieces and nephews then living. On September 12, 1931, Haselbud was married to appellant Anna N. Haselbud and thereafter on October 2, 1934, died without issue, leaving surviving him his mother and his widow, the said Anna N. Haselbud, as well as his sister, the said Lois Fay Haselbud Morris. Thereupon decedent's will was admitted to probate and Bank of America National Trust and Savings Association (apparently the successor of said Security Trust Company) appointed executor thereof. It in due time filed its final account and petition for distribu-

tion, in connection with which appearances were made and objections filed both by respondent Lois Fay Haselbud Morris and appellant Anna N. Haselbud. The gross estate accounted for amounted in value to $7,194.76, consisting of community property of the value of $1770.26 and separate property valued at $5,424.50. The aggregate of debts of the decedent, family allowance, and expenses of administration, was found to be $5,139.09, leaving for distribution, property worth $2,055.67. The widow claimed the right to all the community property and one-half of the separate property after a *pro rata* deduction of these charges. The sister claimed that the debts, family allowance and expenses of administration should be charged to the widow's share so far as that would go, so as, to that extent, to exonerate the property passing under the will. The court adopted that view, the effect of which was to leave no net estate distributable to the widow. The latter appeals.

The appeal presents two questions for solution, that is:

First—Where a will is revoked by a subsequent marriage, as to the surviving spouse, under section 70 of the Probate Code, are the debts, family allowance and expenses of administration to be borne ratably by the portion of the estate vesting in the surviving spouse and the portion passing under the will, or must the portion passing under the will be, so far as possible, exonerated under the provisions of section 750 of the Probate Code?

Second—Are debts, family allowance, and expenses of administration to be borne ratably by the community and separate property of the decedent or is the one or the other to be first charged with the same?

Section 750 of the Probate Code provides that: "If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts, the expenses of administration, or family allowance, they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient. If insufficient, that portion of the estate not disposed of by the will, if any, must be appropriated for that purpose; and if that is not sufficient, the property given to residuary legatees and devisees, and thereafter all other property devised and bequeathed is liable for the same, in proportion to the value or amount

of the several devises and legacies, but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate.''

Section 70 of the same code is as follows: ''If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received.''

While each of these sections constitutes a revision of earlier legislation, both were coincidentally enacted in their present form, as part of the Probate Code, and it is the duty of the courts to construe them together, as well as with reference to the antecedent legislation on the same subjects. Section 70 is a substitute for the former section's 1299 and 1300 of the Civil Code which read respectively as follows:

''1299. Effect of Marriage of a Man on his Will.

''If after making a will, the testator marries, and the wife survives the testator, the will is revoked, unless provision has been made for her by marriage contract, or unless she is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation must be received.''

''1300. Effect of Marriage of a Woman on her Will.

''If, after making a will, the testatrix marries, and the husband survives the testatrix, the will is revoked, unless provision has been made for him by marriage contract, or unless he is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received.''

The Supreme Court said in *Sanders* v. *Simcich*, 65 Cal. 50, 52 [2 Pac. 741] : ''It is the policy of the law that wife and children must be provided for. Therefore the Civil Code declares that where an unmarried person has made a will, and afterwards marries, the marriage, whether followed by the birth of issue or not, operates, in case of the survival of wife, or children if any, as a revocation of the

will, unless some specific provision has been made by the will itself, or by a marriage contract for the surviving wife, or by some settlement or provision for any surviving children of the marriage. (Secs. 1298, 1299, *supra*.) The law presumes that the subsequent marriage of a testator has wrought such a change in his condition in life as to cause him to destroy or cancel a previous will; and does not admit of evidence to the contrary unless provision has been made according to law for wife and children who have survived him. (Secs. 1298, 1299, *supra*.)''

It may be true, as respondents assert, that this expression in *Sanders* v. *Simcich, supra,* as originally uttered, was *dictum*. Nevertheless, it has been so often quoted and approved in the subsequent cases (*Estate of Ryan,* 191 Cal. 307 [216 Pac. 366]; *Estate of Meyer,* 44 Cal. App. 289 [186 Pac. 393]; *Estate of Rozen-Goldenberg,* 1 Cal. App. (2d) 631 [37 Pac. (2d) 132]) that we think we may safely treat it as a construction of the policy underlying the original legislation of which section 70 of the Probate Code is but a reiteration. We have no reason to believe that by consolidating the former substance of sections 1299 and 1300 of the Civil Code in the present section 70 of the Probate Code and by inserting in the latter the words ''as to the spouse'', in the provision respecting the revocation of a will by marriage, the legislature intended in any way to abridge the previously existing law respecting the rights of a surviving spouse. We think it much more natural to assume a continuity of policy, so far as a surviving spouse is concerned, and to construe the limitation on the provision for a revocation of a will by a subsequent marriage, made by the words ''as to the spouse'', not as intended to effect any such abridgment of what under the former statutes would have been the rights of such spouse, but rather as intended merely to preserve the dispositions of the testator in favor of the beneficiaries under the will in so far as consistent with such rights of the surviving spouse. In so far as it affects Mrs. Haselbud's property rights the decedent's will is, by the express provision of section 70 of the Probate Code, no will at all, but is as to her revoked and eliminated from the situation. To say that, although so revoked, it is still effectual to bring her share of the property within the scope of section 750 of the same code would be a contradiction in terms.

It is urged on respondents' behalf that section 300 of the Probate Code provides that all of the decedent's property shall be chargeable with the expenses of administration of his estate and the payment of his debts and the allowance to the family *"except as otherwise provided in this code"*, and that section 754 provides that in selling property to pay debts, legacies, family allowance or expenses, there shall be no priority as between personal and real property, but that a sale therefor may at the discretion of the executor or administrator be made of either, *"except as provided by sections 750 and 751 of this code"*, and that the effect of these enactments, and particularly of the italicized exceptions, is unequivocally to subject *all* property left by the decedent to the provisions of section 750 for first charging the debts, family allowance and expenses of administration to the portion of the estate not disposed of by will. That might be true if, so far as the surviving spouse were concerned, there were any will but, the will having, as to her, been revoked, has not, so far as her right to her share of the property is concerned, any continued existence at all, and therefore cannot, as to it, have any effect at all.

We find nothing in *Estate of Traver,* 145 Cal. 508 [78 Pac. 1058], *Estate of Hall,* 183 Cal. 61 [190 Pac. 364], or *Estate of Kelleher,* 205 Cal. 757 [272 Pac. 1060], cited for respondent, that militates against this view. In each of these cases there was a will, good as against all the world, which, however, for one reason or another failed effectually to dispose of some part of the decedent's estate. In each of these cases, accordingly, it was held that the statute required the charges against the estate to be deducted from the porton not disposed of. The difference between these cases and the one before us is the same already emphasized; that here, so far as appellant is concerned, there is no will. Counsel for respondent quotes and asks us to apply in the instant case the following language from *Estate of Hall, supra*:

"The fallacy in the position of appellant arises from a failure to distinguish between the distribution of the property in accordance with the terms of the will and the payment of debts as provided by law. The court first determines the rights of the parties under the will and then applies the law with relation to the payment of indebtedness."

Merely to quote this language is to demonstrate its inapplicability here. So far as appellant is concerned, there can be no "distribution of the property in accordance with the terms of the will", nor can the court "first determine the rights of the parties under the will" in any such way as to at all affect her. Therefore, when the court here proceeds to "apply the law with relation to the payment of indebtedness", it manifestly must do so without reference to the determination of any rights under the will. Under section 300 of the Probate Code all of the decedent's property is made chargeable with debts, family allowance and expenses of administration "except as otherwise provided in this code". The only exception relied on by respondent is that conceived to exist under the provisions of section 750. In our opinion the controlling effect of section 70 makes that exception inapplicable as against appellant. We therefore hold, so far as this estate is concerned, that the applicability of section 300 is not affected by the section (750) relied on, and that the trial court was in error in charging all of the liabilities of the estate against appellant's share in it.

Complaint is made that this construction unduly favors the surviving spouse and that in this case she has already absorbed the larger part of the estate through the family allowance granted her. That this may have been true in this particular case does not affect the situation. The same complaint might have been made if the former section 1299 of the Civil Code had remained in force and not given place to section 70 of the Probate Code, yet the possibility of a family allowance in no way affected the operation of this former statute. No more do we have any reason for believing that the legislature intended it to affect the operation of the present section 70.

█ We have yet to consider the other question raised on the present appeal: that is, whether the debts, family allowance and expenses of administration are equally chargeable to the community property and the decedent's separate property, or contrariwise, one or the other is primarily chargeable with them. It does not appear from the record before us what was the origin of the debts of the deceased, which, as has been noticed, constitute part of the obligations of the estate. This being so, we are aware of no argument that can be made for exonerating the separate property of

the deceased from bearing at least its *pro rata* share both of these and of the expenses of administration. It is laid down in 24 C. J. 459 (citing *In re Patton,* Myrick's Probate (Cal.) 241) that "Where the expenses of administration are of a general nature, they should be charged *pro rata* on the community property and separate estate . . . " It is claimed, however, as has just been noticed, that in this instance the greater part of the charges against the estate represent family allowance and that since, during the lifetime of the deceased, expenditures for family support were primarily chargeable to community property (*Estate of Cudworth,* 133 Cal. 462, 468 [65 Pac. 1041]; *Estate of Granniss,* 142 Cal. 1, 6 [75 Pac. 324]; *Thompson* v. *Davis,* 172 Cal. 491, 495 [157 Pac. 595]; *Van Camp* v. *Van Camp,* 53 Cal. App. 17, 25 [199 Pac. 885]; *Estate of Tompkins,* 123 Cal. App. 670, 675 [11 Pac. (2d) 886]; *Cline* v. *Cline,* 4 Cal. App. (2d) 626, 629 [41 Pac. (2d) 588]; *Conard* v. *Conard,* 5 Cal. App. (2d) 91, 92 [41 Pac. (2d) 968]) the same rule ought to apply after the husband's death and pending the administration of the estate. The answer is, however, that there is no statute to that effect, and since the right to a family allowance is statutory, we would, in order to announce such a rule, have to read it into the statute. We do not think this would be warranted.

It remains to inquire whether, conversely, all of the debts, family allowance and costs of administration ought to be charged to the decedent's separate property so far as that will suffice to pay them in order, so far forth, to exempt the community property from their payment. There can, of course, be no question that the community property is liable for each and all of these obligations, for section 202 of the Probate Code expressly so declares. The question, then, is merely, as between the community property and the separate property of the deceased husband, whether such separate property should first be resorted to. We can see no reasonable ground for contending for any such rule in so far as the family allowance and expenses of administration are concerned since, at least where, as here, the family allowance inures solely to the benefit of the surviving widow, no equitable reason can possibly exist for exempting the community property from its payment. Moreover, since the expenses of administration are as much incurred in caring

for the community property as in caring for the husband's separate property there is clearly no argument for exonerating the community property from sharing *pro tanto* in their payment.

The only phase of the subject that gives us any pause is the question whether the amendment in 1927 of section 161a of the Civil Code, declaring the interests of the spouses, while living, in the community property to be "present, existing and equal interests", though under the husband's control, invests a surviving wife with any right, which the probate court ought, in the exercise of its equitable powers, to recognize, to have such debts of the husband as may be found not to have been incurred on behalf of the community charged primarily to his separate property. In this connection it is said in 3 California Jurisprudence Supplement, pages 688, 689:

"In the administration of the estate of the husband, the courts of California have not made any distinction between the debts of the husband with respect to his separate property and the debts incurred in managing the community property, nor have there been any rules established requiring either separate or community property to be resorted to for the payment of debts."

The text-writer subjoins in a note this query:

"If, for example, the administrator pays the debts with the community funds, should not the surviving wife be entitled to question his account and petition for distribution and require a due proportion of the amount paid to be charged against his separate estate?"

In the instant case, however, as already noted, the record does not inform us of the nature or origin of the debts proved against the estate. If they are debts incurred in behalf of the community manifestly the community ought to contribute toward their payment. It will be time enough to decide what ought to be the rule with respect to debts incurred by the husband before marriage or on his separate account when a case is presented which clearly involves them.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 15, 1938.