[Civ. No. 13882.   Second Dist., Div. Three.   June 11, 1943.]

Estate of CHARLES C. BENDELL, Deceased. NELLIE V. BENDELL, Administratrix With the Will Annexed, etc., Petitioner, v. WILLIAM W. BENDELL, Appellant; CLARENCE AYRES, Respondent.

Chandler & Wright and Oliver S. Northcote for Appellant.

Vernon W. Hunt for Respondent.

SHINN, Acting P. J.—Charles C. Bendell, when 80 years of age, made a will by which he devised to a friend, Clarence Ayres, a one-half interest in his residence and devised and bequeathed to his son all the rest and residue of his property. Eight months later he married and some three and a half years after his marriage he died. He made no provision for his wife by marriage contract nor was she provided for or mentioned in the will. She was appointed administratrix with the will annexed. During proceedings in probate the residence property was sold, the administration was closed, and the estate was distributed, one-half thereof, amounting to $2,035.14, to the widow, the sum of $1,460.14 to Clarence Ayres, "being one-half of the value of the sale of real estate devised to him plus one-half of rental therefrom, without deduction of any charges of administration expense" and the residue, amounting to some $670, to the son, William W. Bendell, who prosecutes this appeal from the order settling the final account and decreeing distribution. The appeal is upon the judgment roll.

The widow's right to take one-half of the estate results from the fact that the will was inoperative as to her by virtue of section 70 of the Probate Code, which reads as follows: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make

such provision; and no other evidence to rebut the presumption of revocation can be received.''

In support of his contention that the will was revoked in its entirety by the testator's marriage, appellant argues for a construction of said section 70 which would bring about that result. The section incorporates former sections 1299 and 1300 of the Civil Code, with the addition of the words ''as to the spouse'' following the word ''revoked.'' Under the former sections marriage worked a revocation of the will as to all persons. (*Estate of Ryan*, (1923) 191 Cal. 307, 312 [216 P. 366]; *Estate of Meyer*, (1919) 44 Cal.App. 289 [186 P. 393]; *Sanders* v. *Simcich*, (1884) 65 Cal. 50, 52 [2 P. 741].) Section 70 clearly means that a subsequent marriage has the effect of revoking the will *only as to the surviving spouse*. (*Estate of Piatt*, (1943) 57 Cal.App.2d 211, 213 [134 P.2d 321]; *Estate of Russell*, (1941) 43 Cal. App.2d 319, 321 [110 P.2d 718]; *Estate of Haselbud*, (1938) 26 Cal.App.2d 375 [79 P.2d 443].)

We need not consider what the result would be if by reason of the operation of section 70 the testamentary scheme as expressed in the will should be entirely defeated or rendered impossible of execution. We have not such a case. There is no conflict between the rights of the surviving spouse and those of the two beneficiaries under the will; Ayres can still take the one-half interest in the residence property which the widow does not take and appellant can take the residue of the estate. To deny that this would be a valid disposition of the half of the estate upon which the will may operate would be to devitalize the amendment of the governing sections and to strike down what remains of the testator's original plan to dispose of his estate. We have no right to look beyond the will to ascertain what the wishes of the testator were. It may be that if he had written another will after his marriage he would have provided for his son more generously, but all that we know is that he had ample opportunity to change the will and failed to do so. We are obliged to look upon the will as if the testator had reread it after his marriage with full knowledge of his wife's rights under the circumstances and had then elected to make no change in it.

Appellant's second contention is that because of the widow's having taken a half interest in the residence property, the will should be so construed that he and Ayres would share equally in the other half, because the testator orig-

inally intended their interests in the property to be equal. Such a construction, it is contended, would give the greatest possible effect to the will and the desires of the testator, as expressed therein, as between appellant and Ayres, after giving due recognition to the rights of the widow. That it is the purpose of the law and the duty of the court to give effect to the expressed wishes of the testator as completely as possible in these circumstances is not to be doubted (*Estate of Munson,* (1942) 54 Cal.App.2d 590, 592 [129 P.2d 420], and cases there cited; *Estate of Piatt, supra,* 57 Cal.App.2d 211; *Estate of Russell, supra,* 43 Cal.App.2d 319; *Estate of Haselbud, supra,* 26 Cal.App.2d 375), but the court cannot rewrite the testator's will. The devise to Ayres was effective to leave him a half interest in the property if the testator owned not less than a half interest at the time of his death which was subject to testamentary disposition, while the devise to appellant of the residue would leave him only so much of the testator's interest as was not devised to Ayres. Appellant under the will can claim only such excess. If the testator had parted with a half or smaller interest in the property before his death, appellant alone would have been the loser. Because of the marriage the will became inoperative as to the half interest in the real property which the wife inherited, yet it remained operative as to the half left to Ayres. The share of the latter was not reduced when the testator married and died without providing for his wife, because the basis for such a reduction would have to consist of provisions in the will placing Ayres and appellant upon an equality. But the devise to Ayres, being specific and unconditional, gives him a right which is superior to that of appellant, because the latter takes only the residue. It is true that the purpose of the testator to leave his son considerably more of the estate than he was leaving to his friend has been defeated, but it would have required an additional testamentary act to avoid that result, and this cannot be supplied by the courts under the guise of interpretation. The court can no more modify the plain provisions of the will than it can set it aside altogether because of the subsequent marriage. The will could be given an interpretation which would give appellant and Ayres one-fourth each of the real property in question only in the event that they had equal rights to share in the property under the will, which was not the case.

The next point urged is that the court erroneously

charged against the residuary estate certain expenses incurred in the upkeep and sale of the residence property which should have been charged against the proceeds of the sale. There were deducted from such proceeds a real estate broker's commission, certain sums paid for control of termites, and escrow charges. There was then added to the balance $233 received as rental for the property to the time of sale, and the balance was equally divided between the widow and Ayres.

In connection with the sale of the property there were costs of publication and for certified copies amounting to $8.95, and the administratrix and her attorney were each allowed $75 as extraordinary compensation. The account showed sums paid for water bills and taxes on the property, for a water heater purchased, for roof repairs and for termite inspection, in the amount of $79.41. All of these expenses were charged against the residuary estate. The contention is that these sums, totaling $238.36, should have been charged against the share of appellant. It seems to us that the sum of $79.41 should have been deducted from the gross rentals which went to the widow and Ayres; the several sums which made up this total were neither debts of decedent nor expenses of administration in the ordinary sense. Since the widow and Ayres received the income from the property during the period of administration, they should bear the expense of upkeep and improvements which made it possible for the estate to receive the income. However, appellant in his briefs does not contend that the widow's share should have been charged with any part of these items but only that Ayres should have borne his proportionate share of them, whatever that might be. We conclude, therefore, that one-half of the sum, or $39.70, should be deducted from the share of Ayres and added to that of appellant.

In considering appellant's objection to the above mentioned charges for extraordinary services of the administratrix and her attorney and minor expenses of the sale, we must determine what effect the trial court gave to a stipulation entered into by the three parties in interest, which reads in part as follows:

"That in consideration of the following agreement by Nellie V. Bendell, as Administratrix-with-the-will-annexed and individually as the widow of said Charles C. Bendell, deceased, said Clarence Ayres consents that said property may

be sold to Emerson Lucas for the sum of Three Thousand Dollars ($3,000.00).

"That in consideration of the foregoing, Nellie V. Bendell individually and as Administratrix with-the-will-annexed of said Estate, agrees that the proceeds from the sale of the above property shall and will be held by her separate and intact in a separate bank account except for real estate commission in the sum of One Hundred Fifty Dollars ($150.00), escrow fees, and expense of termite extermination necessary in connection with the sale of said property, and that the interest of Clarence Ayres in and to said proceeds shall be the same as his interest in the real estate was prior to said sale, and said Nellie V. Bendell waives the right to obtain payment of any portion of her widow's allowance from the proceeds of said sale, and the proceeds of said sale shall not be subject to any of the debts of the decedent, attorney's fees, commission of administratrix, or expenses of administration, except insofar as the said real property at 3934 South Hobart Blvd. would have been subject to said expenses of administration, and that said fund shall only be distributed in accordance with the order of Court upon proper petition for distribution. . . .

"By signature hereof Chandler & Wright [acting for appellant] approve the making of the sale above mentioned and agree that the net proceeds received from the sale shall have the same status with respect to being a source out of which payment of executor's and Attorneys' fees, family allowance and administration expenses should be made as the real property would have had, had the same not been sold. They do not agree that the claims of legatee, Clarence Ayres are sound but reserve the right to contest the same."

The sale was thereafter made and the stipulation was before the court at the time of confirmation of the sale and at the time of distribution, as appears from the petition for distribution. (While the parties in their briefs have discussed the stipulation and a copy of it is appended to appellant's reply brief, it was not incorporated in the clerk's transcript. The original was ordered brought to this court and we have quoted therefrom as above.) The stipulation appears to us to be an agreement substantially to the effect that the proceeds from the sale of the real property should be regarded as the property itself with respect to charges of any sort made against the same, excepting $150 real estate com-

mission, escrow charges and necessary expense of termite extermination, with which excepted items we are not concerned. The question then is whether the court erred in charging the other items against the residuary estate. The inquiry is further narrowed by the fact that appellant does not contend that any part of these sums should have been charged against the share of the widow. Presumably because no such claim is made against her, no brief has been filed on her behalf. This leaves the question whether any share of the compensation for extraordinary services and the minor expenses of sale should have been charged against the share of Ayres. On this point we find no reason for disturbing the order insofar as it charges the expenses against the residuary estate. The stipulation as between Ayres and appellant is ambiguous but we think it will bear the construction which the court apparently gave it, namely, that Ayres' share of the proceeds of the sale should be subject to no charges except such as might properly have been made against his interest in the real property if the same had not been sold. This construction, we think, would preclude the making of any charges against the proceeds incident to the sale, for had the sale not been made the liabilities would not have been incurred. Under these circumstances we should accept the interpretation which the trial court placed upon the instrument, and our duty so to do is more imperative because the appeal is upon the judgment roll.

The judgment is modified by deducting from the share of Clarence Ayres and adding to the share of appellant, William W. Bendell, as the same are contained in the decree of distribution, the sum of $39.70, and as modified the judgment is affirmed.

Wood (Parker), J., and Shaw, J. pro tem., concurred.