[Civ. No. 13398.  First Dist., Div. Two.  Aug. 26, 1947.]

Estate of MONA M. SKINNER PIATT, Deceased.  J. H. PIATT, Respondent, v. CARRIE S. NORTON et al., Appellants.

King, King & Ghidella and A. Dal Thomson for Appellants.

Boynton & Boynton for Respondent.

NOURSE, P. J.—The surviving husband of Mona Piatt filed his petition for a decree distributing to him certain real and personal property on the ground that it was community property of himself and the deceased. The surviving brothers and sisters of the deceased filed objections claiming under a prenuptial will. They are the appellants from a decree granting the petition.

The decedent executed her will on June 18, 1928, naming the appellants herein as beneficiaries. On July 12, 1930, the decedent and the petitioner herein intermarried. They lived together as husband and wife until the death of decedent on March 10, 1942. She made no changes in the will. The surviving husband, asserting that the will was revoked by the subsequent marriage, and that the entire estate was community property, sought a decree distributing it to him. In the appeal from the decree granting this petition appellants state these two issues—whether the will as a whole was revoked, and whether the property is separate or community. The solution of the first question (as modified by the existing conditions) rests on section 70 of the Probate Code which reads: ''If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received.'' Hence the issue here is really whether the will was revoked insofar only as it affects the interest of the petitioner in the estate.

The section, insofar as it relates to the rights of the surviving spouse, has been interpreted in *Estate of Derruau,* 133 Cal.App. 769 [24 P.2d 865]; *Estate of Rozen-Goldenberg,* 1 Cal.App.2d 631 [37 P.2d 132]; *Estate of Haselbud,* 26 Cal. App.2d 375 [79 P.2d 443]; *Estate of Russell,* 43 Cal.App.2d 319 [110 P.2d 718]; and *Estate of Piatt,* 57 Cal.App.2d 211 [134 P.2d 321]. In the Piatt case, the court, relying on the earlier citations, said (p. 212): ''The proper construction to be placed upon the quoted words is that the surviving spouse shall receive that part of the estate to which he or she would

be entitled had the other died intestate.'' *Estate of Bendell,* 59 Cal.App.2d 165 [138 P.2d 378], is not out of harmony with any of the cases cited. It was there held that section 70 revoked a prenuptial will ''only as to the surviving spouse.'' The result of these holdings is that whatever interest the petitioner herein would have taken if the deceased had died intestate goes to him as the surviving spouse unaffected by the provisions of the will.

The interest of the surviving spouse in this case which is unaffected by the will depends upon whether the property is community or whether it was the separate property of the deceased. If community, his rights are fixed by section 201 of the Probate Code reading: ''Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code.'' If the property is separate and the decedent leaves a surviving spouse and brothers or sisters, as survivors of the parents of the deceased (as is the case here), the property goes one-half to the surviving spouse and one-half to these other heirs (Prob. Code, § 223). ▆ The application of these code provisions to the case at hand determines the rights of the petitioner to be this: that, if the property is community, one-half goes to petitioner absolutely by reason of section 201; the other half was subject to decedent's testamentary disposition. But not having made a valid will, as to the interest of the surviving spouse because of section 70, the remaining one-half of the community stands undisposed of by will and hence goes to petitioner under the exception made in section 201. This is so because the interest of the surviving spouse to inherit the portion of the community not disposed of by will is an interest which rests in him on the death of the wife not leaving a valid will. Where the conditions mentioned in section 70 arise, and the will stands revoked as to the interest of the surviving spouse, it is revoked as to all interest he would have had if the decedent had died intestate.

▆ The question relating to the character of the property is one of fact only. Taking the evidence in the light most favorable to respondent, as we are required to do, it appears that, prior to their marriage, the parties orally agreed that all their property should be held in common. Each then had

a home with furniture and other personal property, though the holding of the petitioner was of comparatively small value. Three months prior to the marriage the decedent borrowed $3,000 on her property which she turned over to petitioner. The parties continued to live in decedent's house until 1934, when they purchased a home on Boynton Avenue, which is the bulk of the estate in controversy. The deed to this property was taken in the name of Mrs. Piatt. But the property was purchased entirely on credit with the joint notes of husband and wife. No portion of the purchase price was paid at the time of the transfer and the evidence is not clear whether the notes then given have been paid. The testimony of petitioner seems to indicate, because of failure to make direct answer, that the bulk of such payments as were made came from the funds of decedent. However, evidence was had showing that both parties were employed—the husband as an engineer, the wife as a school teacher. They apparently kept their earnings in separate bank accounts, but otherwise used them for their common needs.

Of course the oral prenuptial agreement was invalid because not in writing. (Civ. Code, § 178.) But the evidence shows unmistakably that such oral agreement was fully confirmed, ratified, and executed after the marriage.

This is not a case of a contract *malum in se*. The prohibition is for the benefit of the wife—to prevent a fraud upon her. It is a restriction which she may waive after marriage by special agreement or by affirmance. In *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398], the Supreme Court affirmed an oral contract made both before and after marriage. In *Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905], and *Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708], this doctrine was affirmed. These cases do not hold directly that an oral prenuptial contract is enforceable. In the Kenney case the contract was made both before and after marriage but nothing was said about the invalidity of the prenuptial contract, and the succeeding cases merely followed the rule of law of the Kenney case. Here no specific evidence was offered of a second contract made after the marriage. The question then arises whether such a contract may be implied from the conduct of the parties and the circumstances in evidence. We are satisfied that the evidence recited supports such finding particularly since there is nothing in the evidence indicating that the parties had any quarrel over the status of their respective property rights. To the

contrary the evidence is that throughout the marriage the decedent indirectly confirmed the terms of the prenuptial agreement and orally affirmed that all these properties were held in joint ownership.

The circumstances under which the deed to the Boynton Avenue property was placed in the name of the wife together with all the circumstances of their marital conduct were sufficient to support the implied finding that the presumption mentioned in section 164 of the Civil Code, that property conveyed in the name of a married woman is her separate property, was rebutted.

True it is that there are conflicts in the evidence and that the testimony of petitioner is somewhat evasive. But these were matters for the trier of the facts.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied September 25, 1947, and appellants' petition for a hearing by the Supreme Court was denied October 23, 1947.