[S. F. No. 22584.   In Bank.   Aug. 26, 1968.]

Estate of WALTER H. STEWART, Deceased. VIOLA STEWART, as Administratrix, etc., Petitioner and Respondent, v. ADA VAN NOY et al., Claimants and Appellants.

Doty, Quinlan & Kershaw and William A. Quinlan for Claimants and Appellants.

Gallagher, Baker & Manock and John J. Gallagher for Petitioner and Respondent.

TRAYNOR, C. J.—This appeal is from a judgment determining interests in the estate of Walter H. Stewart, deceased. Appellants are the stepchildren of the decedent and the sole surviving beneficiaries under his will. Respondent is decedent's widow and the administratrix of his estate.

The facts are not in dispute. Decedent, his then wife Jennie M. Stewart, and his brother John E. Stewart owned real property in Selma, California, as tenants in common. On June 19, 1936, they entered into a written contract to will their respective one-third interests in the property to the survivors for life and to their respective children on the death of the last survivor.

The contract provided that on "this day each executed a will by which the survivors or survivor is given a life estate in the property held as tenants in common by the parties hereto; that each has read the will of the other and understands the same and approves such will, and each hereby agrees not to revoke or cancel his or her will, without the written consent of the other parties hereto."

Pursuant to the contract decedent executed a will leaving his interest to his wife Jennie M. Stewart and his brother John E. Stewart for life, remainder to his daughter and to his six stepchildren, the children of Jennie Stewart, in equal shares.

Upon John Stewart's death in 1947, decedent and his wife Jennie held the property as cotenants for life. Since none of the beneficiaries named in John Stewart's will was living at the time of his death, decedent inherited John's one-third interest in fee simple. When Jennie Stewart died in 1949, decedent acquired her interest in the property for life.

After Jennie's death decedent married respondent Viola Stewart. Decedent died on May 1, 1965. He was survived by his widow Viola, his brother Sankey M. Stewart, and the six stepchildren of his marriage with Jennie Stewart. His estate consisted of the one-third interest he owned in the Selma property in 1936 and the one-third interest he inherited from his brother John.

Decedent died without making a new will. Viola was appointed administratrix of his estate, and his will of June 19, 1936, was admitted to probate. Viola then filed a petition for a decree determining interests in decedent's estate, claiming a one-half share. Decedent's brother Sankey and the stepchildren contested her claim. The trial court determined that Viola was entitled to half the estate as decedent's post-testamentary spouse under Probate Code section 70 and that the stepchildren were entitled to the other half of the estate under the will.

The stepchildren contend that they are entitled to three-fourths of the estate, the half that was the subject of the

contract, and half the remaining half as beneficiaries under decedent's will, which section 70 does not revoke as to them.

Probate Code section 70 provides that "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received."

Decedent made no provision for Viola in his will or by marriage contract, nor did he mention her in his will. Thus the will is revoked as to her, and whatever interest she would have taken had her husband died intestate goes to her as the surviving spouse "unaffected by the provisions of the will." (*Estate of Piatt* (1947) 81 Cal.App.2d 348, 350 [183 P.2d 919].) Since the estate consists entirely of decedent's separate property, his heirs are Viola and his brother Sankey (Prob. Code, § 223).[1]

Had decedent died intestate, he would have breached his contract with his wife Jennie and his brother John. Since a "mutual will . . . may be revoked by any of the testators in like manner as any other will" (Prob. Code, § 23), decedent could also have revoked the will he made pursuant to the contract. Under either circumstance, however, a court of equity would enforce the contract for the stepchildren's benefit by impressing a trust on the property in the hands of decedent's heirs. (See *Notten* v. *Mensing* (1935) 3 Cal.2d 469, 473 [45 P.2d 198]; *Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878]; *Rundell* v. *McDonald* (1923) 62 Cal.App. 721, 725 [217 P. 1082]; *James* v. *Pawsey* (1958) 162 Cal.App.2d 740, 747 [328 P.2d 1023]; *Van Houten* v. *Whitaker* (1959) 169 Cal.App.2d 510, 515 [337 P.2d 900]; *Warwick* v. *Zimmerman* (1928) 126 Kan. 619, 624 [270 P. 612]; *Underwood* v. *Myer* (1929) 107 W.Va. 57, 59-60 [146 S.E. 896]; cf. *Estate of Rath* (1937) 10 Cal.2d 399, 404 [75 P.2d 509, 115 A.L.R. 836].) Although the stepchildren were not the immediate beneficiaries of decedent's promise, it was "made expressly for [their] benefit." (Civ. Code, § 1559; see *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 588 [2 Cal.Rptr. 609, 349 P.2d 289].) The terms of the agreement were "sufficiently certain

[1] "If the decedent leaves a surviving spouse and no issue, the estate goes one-half to the surviving spouse and one-half to the decedent's parents in equal shares, . . . or if both are dead to their issue. . . ."

to make the precise act which is to be done clearly ascertainable'' (Civ. Code, § 3390, subd. 5; cf. *Owens* v. *McNally* (1896) 113 Cal. 444, 451 [45 P. 710, 33 L.R.A. 369]), and the stepchildren would have no adequate remedy at law by way of money damages for the breach (cf. *Morrison* v. *Land* (1915) 169 Cal. 580, 586 [147 P. 259]; *Doolittle* v. *McConnell* (1918) 178 Cal. 697 [174 P. 305].)

The fact that decedent's post-testamentary marriage resulted in a partial revocation of the will by operation of law does not impair the stepchildren's right to enforcement of the contract, for such a partial revocation can no more prejudice their rights than could a total revocation in repudiation of the contract. Decedent had the full use and enjoyment of the entire property after the death of his wife Jennie and his brother John. Having thus received the benefits of the contract, ''he thereupon became estopped from making any other or different disposition of the property. . . . It follows as well that he could not avoid this estoppel . . . by a subsequent marriage. . . .'' (*Sonnicksen* v *Sonnicksen* (1941) 45 Cal. App.2d 46, 55 [113 P.2d 495].) Thus, Viola's rights attach only to property equitably as well as legally owned by decedent, but not to property that he had only legal title to and that in equity belongs to the stepchildren. (See *Notten* v. *Mensing, supra,* 3 Cal.2d 469, 473; *Brewer* v. *Simpson, supra,* 53 Cal.2d 567, 592; *Lich* v. *Carlin* (1960) 184 Cal.App.2d 128, 138 [7 Cal.Rptr. 555]; *Lewis* v. *Lewis* (1919) 104 Kan. 269, 272-273 [178 P. 421]; *Ralyea* v. *Venners* (1935) 155 Misc. 539, 542 [280 N.Y.S. 8].) Accordingly, had decedent died intestate, Viola would have received half of half the estate that was not subject to the contract. (Prob. Code, § 223.) That is all she is entitled to by virtue of section 70.

Viola contends, however, that by leaving his original interest in the property to the stepchildren decedent fully discharged his obligation to them and that they would receive under the trial court's award all they were entitled to receive under the contract. She concludes that the trial court's distribution of half the estate to the stepchildren and half to her satisfied not only their rights under the contract but also her right to an intestate share under Probate Code sections 70 and 223.

For Viola to receive the entire interest that was not subject to the contract, however, would result in a revocation of the will beyond that contemplated by section 70 and a substitution of her in place of Sankey as an intestate heir. Since that

section revokes the will only "as to the spouse" and leaves the will otherwise intact (Prob. Code, § 70 [the words "as to the spouse" were added in 1931] ; see also *Estate of Bendell* (1943) 59 Cal.App.2d 165, 167 [138 P.2d 378] ), Viola is entitled to only half of half the estate that decedent willed to the stepchildren independently of his obligation under the contract. (Prob. Code, § 223.) The stepchildren are entitled to the other half of that half as devisees under the will. Had decedent died intestate that quarter of his estate would have gone, not to Viola, but to his brother Sankey under Probate Code section 223.

Although section 70 reflects an historic policy that looks with "disfavor toward a testator's failure to provide for his surviving spouse" (*Estate of Duke* (1953) 41 Cal.2d 509, 512 [261 P.2d 235] ), it gives the spouse no absolute right to share in the testator's separate property; to preclude his spouse from inheriting any part of such property, the testator need only "mention" her in the will "in such way . . . as to show an intention not to make" any provision for her. (Prob. Code, § 70.) It would be anomalous to conclude that this statute requires that she receive more because the testator performed his contract than she would have received had he breached it.

The judgment is reversed.

Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. The issue for our determination is whether property devised by the will of the last survivor of a mutual will made pursuant to a written contract is included as part of decedent's estate for the purpose of computing the surviving spouse's share pursuant to section 70 of the Probate Code.

It is appellants' position that decedent's estate is limited by the consequences of his contract and that the surviving spouse's rights operate only on the property not subject to the contract.

Section 70 of the Probate Code reads : "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision;

and no other evidence to rebut the presumption of revocation can be received.''

The policy underlying section 70 of the Probate Code is the social disfavor toward a testator's failure to provide for a surviving spouse. The law presumes that the subsequent marriage has wrought such a change in his condition in life as should have caused him to destroy or cancel a previous will. (*Estate of Duke*, 41 Cal.2d 509, 515 [1] [261 P.2d 235]; *Sanders* v. *Simcich*, 65 Cal. 50, 52 [2 P. 741]; *Estate of Lunn*, 197 Cal.App.2d 848, 851 [3] [17 Cal.Rptr. 705, 97 A.L.R.2d 1020].)

It is undisputed that decedent made no provision for Viola in his will or by marriage contract. Under the circumstances the will is revoked as to her, and whatever interest she would have taken had her husband died intestate goes to her as the surviving spouse unaffected by the provisions of the will. (*Estate of Piatt*, 81 Cal.App.2d 348, 349-350 [1] [183 P.2d 919]; *Estate of Russell*, 43 Cal.App.2d 319, 321 [110 P.2d 718]; *Estate of Haselbud*, 26 Cal.App.2d 375, 379 [79 P.2d 443].) All of decedent's property was separate property. His only heirs were his spouse and a brother, and had he died intestate Viola would have succeeded to one-half of his estate under section 223 of the Probate Code, which reads: ''If the decedent leaves a surviving spouse and no issue, the estate goes one-half to the surviving spouse and one-half to the decedent's parents in equal shares, or if either is dead to the survivor, or if both are dead to their issue and the issue of either of them, by right of representation.''

Appellants argue that if decedent had died intestate the property which was the subject matter of the contract would have been excluded from his estate and cannot therefore be considered in computing the surviving widow's share. According to their theory, whenever any of a decedent's property was the subject of a contract to make a will, that property would be excluded from his estate before any adjudication had been made as to the enforceability of the contract. Their position is untenable. Not every contract to make a particular disposition of property will be specifically enforced, particularly where statutory rights of a surviving spouse intervene between the making of the contract and the death of the promisor. The after-acquired rights of a surviving spouse must be considered in balancing the equities between donee beneficiaries under the contract and the statutory rights of the surviving spouse. (*Owens* v. *McNally*, 113 Cal. 444 [45 P. 710, 33 L.R.A. 369];

*Sargent* v. *Corey,* 34 Cal.App. 193 [166 P. 1021] ; *Ver Standig* v. *St. Louis Union Trust Co.,* 344 Mo. 880 [129 S.W.2d 905].) Where a person seeking to enforce the contract is a third party beneficiary, he would have to prove that the contract was made especially for his benefit (Civ. Code, § 1559), and if his remedy were at law instead of in equity a claim would have to be filed against the estate of the decedent (Prob. Code, § 707).

When a person dies, the title to his property, real and personal, passes to the person to whom it is left in his will or who takes by intestacy, but all of his property is subject to the possession of the executor or administrator for purposes of administration, sale or other disposition. (Prob. Code, § 300; *Ludwicki* v. *Guerin,* 57 Cal.2d 127, 131 [17 Cal.Rptr. 823, 367 P.2d 415] ; *Carlson* v. *Lindauer,* 119 Cal.App.2d 292, 308 [8b] [259 P.2d 925].) Whether a person dies testate or intestate, his personal representative is required to file an inventory and appraisement of the estate which has come into his possession or knowledge (Prob. Code, § 600) and if any portion of an estate is the subject of an adverse claim it must nevertheless be inventoried and accounted for by the representative in the course of his administration. (20 Cal.Jur.2d, Executors and Administrators, § 422, pp. 617-618, 21 Cal.Jur.2d, *op.cit. supra,* § 703, p. 64.)

Appellants also contend that it is immaterial that decedent left a will, as they have an enforceable right to the property under the contract. It is true that the contract and the will are separate instruments and that appellants' rights depend upon the contract, but the contract was merely a contract for the right to have the property of the promisor pass in a particular manner at his death. The promisee has an equitable right to demand the property, which right includes the equitable right to restrain the promisor or those claiming under him from impairing the practical realization of the benefits of that right. (Sparks, Contracts to Make Wills (1956) pp. 109-110.) If one party breaches the contract by failing to make his will or by revoking it, the other party has legal and equitable remedies, not as a beneficiary under the promised will but as promisee or third-party beneficiary under the contract. (See, e.g., *Brewer* v. *Simpson,* 53 Cal.2d 567, 588-589 [12-13] [2 Cal.Rptr. 609, 349 P.2d 289] ; *Brown* v. *Superior Court,* 34 Cal.2d 559, 563-564 [4-5] [212 P.2d 878] ; *Bank of California* v. *Superior Court,* 16 Cal.2d 516, 524 [9] [106 P.2d 879] ; *Owens* v. *McNally, supra,* 113 Cal.

444, 454; *Riganti* v. *McElhinney*, 248 Cal.App.2d 116, 120 [1] [56 Cal.Rptr. 195]; *Henderson* v. *Fisher*, 236 Cal.App.2d 468, 472 [2] [46 Cal.Rptr. 173]; *Thompson* v. *Beskeen*, 223 Cal. App.2d 292, 294 [1], 296 [3] [35 Cal.Rptr. 676]; *James* v. *Pawsey*, 162 Cal.App.2d 740, 747-748 [4-8] [328 P.2d 1023]; *Sonnicksen* v. *Sonnicksen*, 45 Cal.App.2d 46, 52-55 [4] [113 P.2d 495].)

In the present case, the decedent did not breach his contract; he made a will as promised and has done nothing to impair appellants' right to the property. A contract to make a particular disposition of property by will is breached only if it has not been complied with at the time of the promisor's death. (*Ludwicki* v. *Guerin*, *supra*, 57 Cal.2d 127, 130 [3]; *Thompson* v. *Boyd*, 217 Cal.App.2d 365, 376 [13] [32 Cal. Rptr. 513].)

Regardless of the separate nature of a contract and a will, a contract to make disposition of property by will for all practical purposes amounts to a testamentary disposition. (Cf. *Rubin* v. *Irving Trust Co.*, 305 N.Y. 288, 298 [113 N.E.2d 424, 427].) Therefore, the one-third interest decedent owned at the time the contract was made is an asset of his estate. The contract having been fully performed when the testator died leaving a will in accordance with its terms, the contractual obligation terminated, and his property is transmitted through his will. In this heirship proceeding, the probate court had jurisdiction to adjudicate all the conflicting claims relating to the assets of decedent's estate (*Estate of Baglione*, 65 Cal.2d 192, 196-197 [3-4] [53 Cal.Rptr. 139, 417 P.2d 683]; *Estate of Plum*, 255 Cal.App.2d 357, 360-362 [2] [63 Cal. Rptr. 241]) and it correctly determined the respective interests of the stepchildren collectively to be one-half of the estate and the surviving spouse one-half.

Appellants contend that the judgment gives the surviving spouse more than she would have received had decedent died intestate. This objection is not well taken. If decedent had died intestate, appellants, as his stepchildren, would not have succeeded to the portion of his property that was not subject to the contract, so they have not been harmed. Furthermore, one might as well speculate that decedent, without breaching his contract, could have executed a codicil devising to his surviving widow the property he inherited from his brother John that was not subject to the contract. Appellants are in no better position to argue what might have happened had decedent died intestate than if he had made a codicil.

The only relevancy in this proceeding as to whether decedent had died intestate is that the applicable statute of succession (Prob. Code, § 223) provides a yardstick to measure the share that the surviving spouse takes where no provision is made for her in the will. Her rights as surviving spouse are derived from the statute (Prob. Code, § 70) but the quantum of her share in decedent's estate is the same as upon intestacy.

The facts of this case are that decedent died leaving a will in accordance with his contract and did not breach the contract. The partial revocation by operation of law operated only to revoke the will, not the contract, to the extent that the surviving spouse is entitled to one-half of decedent's estate. By the probate court's decree determining appellants' interest as one-half of the estate they receive the same amount of property as decedent promised to leave them. Where, as here, decedent's estate was sufficient to satisfy both his equitable contractual obligation to his stepchildren and the statutory share of his post-testamentary spouse, it is unnecessary to consider what the result would be if by reason of the operation of section 70 the testamentary scheme were defeated.

I would affirm the judgment.

Burke, J., concurred.